[No. F003114. Fifth Dist. Oct. 31, 1984.]

DURLIN D. RICHARDSON, Plaintiff and Appellant, v.
GAB BUSINESS SERVICES, INC., et al., Defendants and Respondents.

COUNSEL

Klein, Wegis & Duggan, Gregory A. Muir and Ralph B. Wegis for Plaintiff and Appellant.

Manthei & Muir, Rick W. Manthei and David S. Schlueter for Defendants and Respondents.

OPINION

BROWN (G. A.), P. J.—In a separate action, plaintiff and appellant, Durlin D. Richardson, successfully prosecuted a personal injury claim against defendant and respondent, Safeway Stores, Inc. (Safeway), arising out of an injury which occurred on Safeway's premises. The jury awarded Richardson $16,500. Defendant GAB Business Services, Inc. (GAB) was an independent adjustment firm engaged in the business of investigating and adjusting claims. Safeway, a self-insured corporation, employed GAB to investigate Richardson's personal injury claim against Safeway.

Plaintiff filed the instant suit against Safeway and GAB seeking to recover additional damages, alleging a violation by the defendants of Insurance Code[1] section 790.03 (Unfair Trade Practices Act of the Insurance Code; div. 1, pt. 2, art. 6.5, § 790 et seq.). The act is applicable to those persons and entities "engaged in the business of insurance." (§ 790.01.)

The complaint alleges: ". . . that Safeway Stores, Inc. is self-insured to a dollar amount in excess of that amount relevant to this claim, and Safeway Stores, Inc. is therefore in the business of insurance to the extent it adjusts and resolves claims made for bodily injury or property damage within the dollar amount of that self-insurance." At another place the complaint alleges that "Safeway Stores, Inc. was a self insured corporation, with its principal place of business in the State of California, and was doing business as a retail grocery store."

The complaint further alleges ". . . Safeway Stores, Inc. retained GAB to investigate Richardson's bodily injury, including the nature and extent of his injury, the amount of his medical expenses, the amount of his wage loss, the extent and nature of any pain and suffering resulting from that injury, and the relative liability of all parties who might be responsible for such injuries and damages."

---

[1] All references are to the Insurance Code unless otherwise indicated.

The complaint alleges in substance that (1) GAB determined that Safeway was, at minimum, substantially responsible for plaintiff's injury and thus responsible to pay plaintiff at least $16,000; (2) plaintiff offered to settle his claim for $10,000, and defendants counteroffered to settle the claim for $2,500; (3) defendants refused to consider plaintiff's offer in good faith and attempted to coerce plaintiff to accept an amount below the true value of his claim; (4) plaintiff's action against defendant Safeway came to trial and the jury awarded plaintiff $16,500 against Safeway; (5) plaintiff suffered actual damages and damages suffered due to emotional distress caused by defendants; and (6) defendants wilfully violated section 790.03 with the intent to defraud or harass plaintiff, and refused to settle plaintiff's claim in good faith, thus allowing punitive damages to be awarded.

The Unfair Trade Practices Act of the Insurance Code defines unfair and deceptive practices and unfair methods of competition and prohibits such acts in the business of insurance. The part of the act germane to this case is section 790.03, subdivisions (h)(2), (3), and (5), which states: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.

". . . . . . . . . . . . . . . . . . . . . .

"(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

". . . . . . . . . . . . . . . . . . . . . .

"(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

"(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

". . . . . . . . . . . . . . . . . . . . . .

"(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Interestingly, subdivisions (h)(2) and (3) refer to "insurance policies."

The trial court sustained defendants' general demurrer to the complaint without leave to amend and entered a judgment of dismissal from which this appeal is taken by plaintiff. ▮▮▮ The central issue is whether section 790.03 is applicable to self-insured (noninsured) defendants. We hold that

it is not and that under the facts alleged neither Safeway nor GAB was "engaged in the business of insurance" (§ 790.01).

The court accepts as true the properly pleaded allegations of the complaint. (*Carr* v. *Progressive Casualty Ins. Co.* (1984) 152 Cal.App.3d 881, 885 [199 Cal.Rptr. 835]; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].) Plaintiff has the burden of establishing the demurrer was sustained erroneously. A ruling sustaining a general demurrer is erroneous if the complaint alleges facts which entitle plaintiff to relief on any legal theory. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817].)

"Insurance" is defined by Insurance Code section 22 as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Insurance has also been defined as an agreement whereby one party for consideration promises to pay another party money or its equivalent or to perform acts of value on the destruction, death, or loss of, or injury to someone or something by specified perils. Essential to insurance is the element of shifting of the risk of loss, subject to contingent or future events, by legally binding agreement. (39 Cal.Jur.3d, Insurance Contracts and Coverage, § 1, p. 199.)

It is apparent on the face of the complaint that there is no insurance contract and no insurance company involved in this case. The allegation of self-insurance, which is equivalent to no insurance, is repugnant to the concept of insurance which fundamentally involves the shifting to a third party, by contract, for a consideration, the risk of loss as a result of an incident or event. In the instant case the liability for the injury to plaintiff was shifted to no one. It remained with Safeway, the very entity that caused the injury.

An analogy may be found in the case of *Gallo Glass Co.* v. *Superior Court* (1983) 148 Cal.App.3d 485 [196 Cal.Rptr. 23], wherein this court held that a self-insured employer for workers' compensation purposes was noninsured and was not transformed into an insurer by merely investigating employee claims in fulfillment of its legal obligation. "*Williams* v. *International Paper Co.* (1982) 129 Cal.App.3d 810 [181 Cal.Rptr. 342] holds that an employer does not act in the capacity of an insurer when self-insured. We agree with this conclusion and the court's cogent statement of its reasoning: '. . . We are aware of nothing in California statutory or case law which would extend this concept of dual capacity to an employer who

has no workers' compensation insurance carrier but simply has opted to stand ready to pay any such claims himself. He is still only the employer and has not been transformed into two legal entities where there was but one before. [Citation.]' (129 Cal.App.3d at p. 815; fn. omitted.)

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

". . . An employer's liability for workers' compensation benefits is imposed by law and is involuntary. Insurers assume workers' compensation liability voluntarily for a fee. It is rational to grant employers, who must directly or indirectly pay the cost of workers' compensation, greater immunity from civil liability than insurers, who act voluntarily for profit." (*Id.*, at p. 489.)

The same reasoning should apply to a self-insured (noninsured) corporation which investigates and settles tort claims against it on its own.

It appears to us that the actionable wrong of "bad faith" contained in section 790.03 is a codification of the earlier tort of bad faith, which historically is a breach of the duty of good faith and fair dealing which is implied in every contract. (*Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751 [128 P.2d 665]; *Brown* v. *Superior Court* (1949) 34 Cal.2d 559 [212 P.2d 878]; *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173].) Section 790.03 merely enumerates those practices which are actionable and extends the cause of action to third party claimants, such as a third party's tort claim against a liability insurance carrier for a tortfeasor. Thus, the insurance contract itself is the basis for holding insurance companies and those engaged "in the business of insurance" to a higher standard when negotiating and settling claims.

Plaintiff makes the novel argument that because of the size of Safeway and the fact it regularly and significantly adjusts its own liability claims, it is "engaged in the business of insurance." We know of no authority holding that whether one is engaged in the business of insurance depends upon the number of claims that are adjusted. Plaintiff relies upon *Delos* v. *Farmers Insurance Group* (1979) 93 Cal.App.3d 642 [155 Cal.Rptr. 843]. That case does not support his argument. *Delos* held that a cause of action under section 790.03 may be stated against a management group of an insurance exchange. The functions of the management group

are described in the *Delos* opinion as: "'. . . A management company or an attorney-in-fact is appointed to handle all of those monetary and other affairs to see that the property is properly accepted and properly disbursed and properly accounted for.' In order to effectuate this relationship, every policyholder of the Exchange was required to appoint the Group as attorney-in-fact." (*Delos* v. *Farmers Insurance Group, supra,* at pp. 651-652.) The court so held because the management group could exercise functions of an insurer: setting rates, settling losses, compromising claims, and canceling contracts. Further, the management group received sizable percentages of the premiums deposited in consideration of its services. The court thus rejected the group's assertion that it was not engaged in the business of insurance. (*Delos* v. *Farmers Insurance Group, supra,* 93 Cal.App.3d 642, 652-653.) *Delos,* as distinguished from the instant case, involved the management of an insurance company.

In the trial court plaintiff did not suggest to the court any amendment to the complaint or request leave to amend the complaint. At oral argument before this court he suggested he would have liked to amend to allege Safeway was engaged in the business of insurance. Aside from the serious question of waiver by failure to request the trial court for leave to amend, we note the complaint in fact alleges Safeway "is . . . in the business of insurance." Further, as we have heretofore suggested, an allegation of being self-insured (noninsured) is totally inconsistent with an allegation of being engaged in the business of insurance. The former allegation renders it impossible to be engaged in the business of insurance.

Plaintiff's policy arguments are more properly addressed to the Legislature than to this court. We conclude that the trial court did not err in sustaining the demurrer of Safeway without leave to amend.

Plaintiff argues that GAB was engaged in the business of insurance and therefore falls within the ambit of section 790.03. Assuming, without concluding, that such a result might be possible if GAB had been employed by an insurance company because claims investigation, processing and handling are inextricably wound up with the business of an insurance company, in the case before us GAB was not retained by an insurance company but by Safeway. Assuming, as plaintiff alleges, that GAB "steps into the shoes" of the entity or person for whom it adjusts claims, in this case that entity is Safeway, a noninsured corporation. Absent an employer who was engaged in the business of insurance, we cannot envision how section 790.03 could be applicable to an independent adjusting firm. There was no error in sustaining the demurrer of GAB without leave to amend.

The judgment is affirmed. Costs on appeal to defendants.

Andreen, J., and Martin, J., concurred.