[No. A032656. First Dist., Div. Four. Feb. 28, 1986.]

RONALD BODENHAMER et al., Petitioners, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
GENERAL ADJUSTMENT BUREAU et al., Real Parties in Interest.

**COUNSEL**

N. A. Misciagna, P. Richard Colombatto, Dale E. Blunier, Barbara J. Damlos and Misciagna, Schneider & Colombatto for Petitioners.

No appearance for Respondent.

Jonathan H. Erb, Otto F. Becker and Thornton Taylor & Downs for Real Parties in Interest.

**OPINION**

**POCHÉ, J.**—The sole issue in this mandate proceeding is whether the Unfair Trade Practices Act (Act) of the Insurance Code (Ins. Code, § 790 et seq.;[1] see also § 1620.2) which regulates trade practices in the business of insurance applies to independent claims adjusters. We hold that it does.

### I.

In November 1981, Bodenhamer Jewelers was burglarized as a result of which petitioners, Ronald and Nada Bodenhamer, filed claims under insur-

---

[1] Unless otherwise indicated, all further statutory references are to the Insurance Code.

ance policies issued by St. Paul Fire & Marine Insurance Company and Lexington Insurance Company. Both insurance companies hired General Adjustment Bureau (GAB), to adjust the claims. When disputes arose concerning the amount of the claims, petitioners filed suit against the insurers, against Coldwell-Banker, insurance brokers, and against real parties in interest, GAB and Richard C. Rosa, the GAB employee who processed the claim. As to real parties, petitioners alleged fraudulent misrepresentations and violations of section 790.03.[2]

In a motion for summary judgment or partial adjudication of issues, real parties challenged the cause of action for violation of subdivision (h) of

---

[2]Petitioners alleged that real parties had violated section 790.03, subdivisions (h)(1), (2), (3), (4), (5), (6), (7), (12) and (13).

Section 790.03 provides in part: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.

". . . . . . . . . . . . . . . . . . . .

"(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

"(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.

"(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

"(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

"(4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

"(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

"(6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

"(7) Attempting to settle a claim by an insured for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

"(8) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, his representative, agent, or broker.

"(9) Failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made.

"(10) Making known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.

"(11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

"(12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

"(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

"(14) Directly advising a claimant not to obtain the services of an attorney.

"(15) Misleading a claimant as to the applicable statute of limitations."

section 790.03, on the ground that this section does not apply to independent insurance adjusters. ■■ ■■ ■■ ■■ The trial court agreed and granted summary adjudication in favor of real parties on this issue.[3] Petitioners seek a writ of mandate directing the trial court to vacate its order.

The purpose of the Act is "to regulate trade practices in the business of insurance . . . by defining . . . such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." (§ 790.) Section 790.02 prohibits any person from engaging in any trade practice defined in section 790.03 as "an unfair or deceptive act or practice in the business of insurance," including the prohibition of "unfair claims settlement practices." Section 790.01 applies the Act to "reciprocal and interinsurance exchanges, Lloyds insurers, fraternal benefit societies, fraternal fire insurers, grants and annuities societies, insurers holding certificates of exemptions, motor clubs, nonprofit hospital associations, agents, brokers, solicitors, surplus line brokers and special lines surplus line brokers *as well as all other persons engaged in the business of insurance.*" (Italics added.)

■■ Since the Act applies to all persons engaged in the business of insurance the sole and first impression question is whether independent claims adjusters fit within that definition.[4]

Real parties contend that the fact that "adjusters" are not expressly listed in section 790.01 reveals that the Legislature intended that the Act should not apply to the independent insurance adjuster. They consider it significant that the National Association of Insurance Commissioners' model legislation, upon which the Act was patterned (see *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 885 [153 Cal.Rptr. 842, 592 P.2d

---

[3]The summary judgment motion raised other issues and resulted in summary judgment in favor of real parties and against Ronald Bodenhamer. The orders left Nada Bodenhamer with a cause of action against petitioners for fraudulent misrepresentation. An appeal of the summary judgment against Ronald Bodenhamer, though available now, is not an adequate remedy since the case will go on without a substantial portion being heard on the merits. (Cf. *Nazaroff* v. *Superior Court* (1978) 80 Cal.App.3d 553, 557-558 [145 Cal.Rptr. 657].)

[4]Although the appellate reports contain examples of actions brought without challenge under section 790.03, subdivision (h) against independent adjusters, no appellate court has been faced with the question in any context remotely similar to the one at hand. For example, in *Richardson* v. *GAB Business Services, Inc.* (1984) 161 Cal.App.3d 519 [207 Cal.Rptr. 519], the court opined that the Act would have no applicability to cases where the independent claims adjuster represented a self-insured entity. Also wide of the present situation is *Santiago* v. *Employee Benefits Services* (1985) 168 Cal.App.3d 898 [214 Cal.Rptr. 679], which involved an unsuccessful attempt by an injured worker to state a cause of action under the Act against his self-insured employer and its independent claims adjuster for delay in paying a worker's compensation award. The Court of Appeal held that the conduct complained of was clearly within the exclusive jurisdiction of the Workers' Compensation Appeals Board.

329]), specifically included adjusters. The model act did so by defining "'Person'" as "any individual, corporation, association, partnership, reciprocal exchange, inter-insurer, Lloyds insurer, fraternal benefit society, *and any other legal entity engaged in the business of insurance, including agents, brokers and adjusters.*" (Italics added.)

What we deem significant is that the mention of "adjusters" in the model act is only by way of illustration of those who are "engaged in the business of insurance" and that the Act in section 790.01 uses very similar language in taking the same approach: its many examples are not exclusive. That an adjuster is clearly seen by the drafters of the model act to be within the definition of "any other legal entity engaged in the business of insurance" could not have escaped the California Legislature which simply used another list of examples. Thus we do not regard this minor difference between the model act and the Act as indicative of an intent to exclude adjusters.

In the same vein real parties conclude that since the organizations specifically listed in section 790.01 are either insurers or brokers, the term "all other persons engaged in the business of insurance" must be limited only to insurers or brokers. Given the broad purpose of the Act—regulation of trade practices in the business of insurance—it would do considerable violence to the statutory language to read as outside the reach of the Act, insurance adjusters who by definition conduct an important aspect of the business regulated.

Real parties' last line of defense is that if the Act does apply to insurance adjusters it reaches only those who are employees of insurers and thus not independent adjusters. They point out that at the time the Act was enacted regulation and licensing of independent insurance adjusters was the task of the Director of Consumer Affairs pursuant to the Private Investigator Act (Bus. & Prof. Code, § 7512 et seq.) as contrasted with the administration of the Act which is entrusted solely to the Insurance Commissioner. (§§ 790.04, 790.05.)

There is nothing novel or incongruous in subjecting a business to the regulation of more than one agency or more than one code. What would be odd would be to construe the Act as prohibiting unfair settlement practices by employees of an insurance company but as not prohibiting identical acts when perpetrated by an independent adjuster working for an insurance company. But if there is any logic to this argument concerning incongruity by dual regulation it was erased when the Legislature in 1980 removed the licensing and regulation of insurance adjusters from the Director of Consumer Affairs and placed those concerns in the lap of the Insurance Commissioner by enactment of the Insurance Adjuster Act (§ 14000 et seq.). By

so doing the Legislature put in letters 10 feet tall its determination that the insurance adjuster is in the business of insurance. Nor is there any conflict between the Act and the Insurance Adjuster Act. (Compare §§ 14038 and 14039 with § 790.03.) Both Acts apply to the independent insurance adjuster.

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting the motion of GAB Business Services, Inc. and Richard C. Rosa pursuant to section 437c of the Code of Civil Procedure insofar as that order held that these defendants cannot be liable for violation of section 790.03 of the Insurance Code.

Anderson, P. J., and Sabraw, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied May 22, 1986.