[No. A027880. First Dist., Div. Five. Mar. 13, 1986.]

RONALD L. DAVIS et al., Plaintiffs and Respondents, v.
CONTINENTAL INSURANCE COMPANY et al.,
Defendants and Appellants.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Bronson, Bronson & McKinnon, Paul H. Cyril, Elliot L. Bien and Richard R. Dale for Defendants and Appellants.

Lipsky & Blickenstaff, Kenneth C. Blickenstaff, Edward P. Mathewson and Leonard Sacks for Plaintiffs and Respondents.

**OPINION**

**HANING, J.**—We are called upon to determine whether the prohibitions of Insurance Code section 790.03, subdivision (h), apply to independent

insurance adjusters retained by insurance companies to investigate and resolve claims.[1]

I

Underwriters Adjusting Company, an independent insurance adjuster, was retained by Continental Insurance Company to investigate and adjust a claim with respondents Ronald and Michele Davis.[2] Settlement negotiations failed, Continental denied the claim, and respondents sued Continental and Underwriters for, inter alia, violation of section 790.03, subdivisions (h)(1) through (5), and recovered general and punitive damages against each. Continental does not contest its liability for general damages nor the amount thereof, but appeals only on the ground that the punitive damages are inappropriate and excessive. Underwriters contends it is not subject to section 790.03, and has no liability thereunder.

We emphasize that we are confronted with a finding of liability based only on a violation of a statutory duty. Therefore, it is unnecessary to discuss Underwriters' theories which exonerate it due to the lack of a contractual relationship with respondents.[3] Section 790.03 is part of the Unfair Practices Act. (§ 790 et seq.) Underwriters contends that the Unfair Practices Act applies only to persons and entities engaged in the business of insurance, that independent insurance adjusters are not so engaged, and thereby reasons that it cannot be subject to liability for violation of a statute which was not designed to regulate its activities. It further contends that independent insurance adjusters are regulated solely by the Insurance Adjusters Act (§ 14000 et seq.), to the exclusion of section 790.03.

---

[1]Insurance Code section 790.03 provides, in pertinent part: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. . . . (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: [¶] (1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue. [¶] (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. [¶] (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies. [¶] (4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured. [¶] (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."
Unless otherwise indicated, all further statutory references are to the Insurance Code.

[2]Underwriters is a wholly owned subsidiary of Continental, but that fact is not determinative of any issue herein.

[3]We also do not imply any criticism or disagreement with the decision in *Richardson* v. *GAB Business Services, Inc.* (1984) 161 Cal.App.3d 519 [207 Cal.Rptr. 519], wherein an independent adjuster retained by a self-insured grocery store corporation was held not to be subject to section 790.03. That decision rests upon a factual matrix different from that in the instant case, in that an insurance claim was not in issue.

Addressing this latter contention first, we note at least two reasons for its rejection. First, the mere fact that adjusters are regulated under one area of the Insurance Code does not preclude them from being governed by other portions. (See, e.g., restrictions on compensation of insurance adjusters in §§ 815-816.) No provision of the Insurance Adjusters Act can be construed as insulating adjusters from liability for conduct prohibited by other regulatory acts in the Insurance Code. Second, the Insurance Adjusters Act is principally concerned with licensing. Its regulatory provisions primarily govern the adjusters' relationship with their clients, rather than with the insured party or the claimant, as contrasted with subdivision (h) of section 790.03, which is designed to protect insureds, claimants and the general public.

■ To determine who is governed by the Unfair Practices Act we look first to its language, which specifically defines and prohibits various "unfair claims settlement practices" as "unfair and deceptive acts or practices in the business of insurance." (§ 790.03.) Hence, the Act clearly recognizes that the settlement of insurance claims is part and parcel of the business of insurance. Section 790.01 states: "This article applies to reciprocal and interinsurance exchanges, Lloyds Insurers, fraternal benefit societies, fraternal fire insurers, grants and annuities societies, insurers holding certificates of exemptions, motor clubs, nonprofit hospital associations, agents, brokers, solicitors, surplus line brokers and special lines surplus line brokers as well as *all other persons engaged in the business of insurance.*" (§ 790.01, italics supplied.)

■ The mere fact that adjusters are not specifically delineated in the statute does not operate to exclude them from its coverage. It appears clear that the Legislature's reference in section 790.01 to "all other persons engaged in the business of insurance" is not meaningless surplusage, a construction which should be avoided, if possible. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) Rather, in this context the *ejusdem generis* doctrine of statutory construction applies. It provides "that where general words follow specific words in an enumeration, the general words are construed to embrace things similar in nature to those things enumerated by the preceding specific words. [Fn.] [Citations.] [¶] *Ejusdem generis* applies under the following circumstances: A statute contains an enumeration by specific words; the members of the enumeration constitute a class; the class is not exhausted by the enumeration; a general reference supplements the enumeration, usually following it; and there is no clearly manifested intent that the general term be given a broader meaning than the rule requires. [Citation.]" (*People* v. *Hernandez* (1978) 90 Cal.App.3d 309, 315 [155 Cal.Rptr. 1].) Hence, Underwriters is encompassed by section 790.03 if, at the time of its conduct

giving rise to the cause of action herein, it was engaged in the business of insurance.

■ The Insurance Code contains a statutory definition of "insurance,"[4] but not of the phrase "business of insurance." However, our review of the Insurance Code and relevant decisions of our Supreme Court leads us to conclude that independent insurance adjusters retained to investigate and settle insurance claims are engaged in the business of insurance.[5]

In *Colonial Life & Accident Ins. Co.* v. *Superior Court* (1982) 31 Cal.3d 785 [183 Cal.Rptr. 810, 647 P.2d 86], an insurance company (Colonial), its independent claims adjuster (Equifax, Inc.) and the adjuster's employee (J. T. Sharkey) were sued for damages resulting from alleged unfair practices in violation of section 790.03. Equifax had been ordered by the trial court to produce records concerning other cases handled by Sharkey. Colonial petitioned for a writ of mandate to bar the plaintiff from discovering the identities of other Colonial claimants, or to restrict the plaintiff's use thereof. The Supreme Court affirmed and denied relief, emphasizing that although the insurance company was also being sued under contractual theories, the adjusters were being charged only with the violation of section 790.03 (*id.*, at p. 788, fn. 1), and that "evidence regarding Sharkey's previous dealings may be relevant to prove ratification or authorization by Equifax and Colonial of his alleged unfair acts. This proof may also be relevant to the issue of punitive damages." (*Id.*, at p. 792, fn. 9.) Thus, even though the issue presented by the instant case was not squarely before it in *Colonial Life,* the Supreme Court clearly recognized the implication of its decision.

Shortly following its decision in *Colonial Life,* the Supreme Court was asked in *Illinois Commercial Men's Assn.* v. *State Bd. of Equalization* (1983) 34 Cal.3d 839 [196 Cal.Rptr. 198, 671 P.2d 349] to determine whether California could tax the gross premiums collected by foreign insurance companies who solicited business here by mail and used local independent insurance adjusters to investigate and settle claims. "The significant element in making this determination is whether the contacts between the insurers and the state justify imposition of the tax under the due process clause of the Fourteenth Amendment to the United States Constitution." (*Id.,* at p. 843.) The court held that the foreign insurers were subject to California tax, and that within that context "the investigation and settlement

---

[4]Section 22 states: "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event."

[5]At least one federal court has arrived at the same conclusion. (See *Reasoner* v. *Aetna Life Ins. Co.* (S.D.Cal. 1984) 600 F.Supp. 278.)

of claims is an integral and crucial aspect of the business of insurance." (*Id.*, at p. 849.)

This observation by our Supreme Court in the *Illinois Commercial* decision is equally appropriate within the context of the instant case. The readiness and ability to cover losses is the very *raison d'être* of insurance, and most of the regulatory features of the Insurance Code are designed to protect the insured parties, claimants and the public, by attempting to guarantee that insured losses will be covered when they occur. (See, e.g., requirements for reserve accounts in § 923.5, and membership in the California Insurance Guarantee Association required by § 1063.) From the perspective of the policyholders who have faithfully paid their premiums, the most essential part of the business of insurance is the prompt and forthright investigation and payment of their claims. It is common knowledge, that a substantial portion of the insurance claims which are annually investigated and negotiated through to settlement in California are handled by independent insurance adjusters, many of whom are representing foreign insurers. (See, e.g., *Illinois Commercial Men's Assn.* v. *State Bd. of Equalization, supra,* 34 Cal.3d 839.) To absolve adjusters from liability for engaging in conduct prohibited by the Unfair Practices Act is to deny the protection of that Act to the persons it was designed to benefit.[6] (See *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329].) Underwriters was engaged in the business of insurance as defined by the Unfair Practices Act, and subject to the proscriptions of section 790.03, subdivisions (h)(1) through (5).

II*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

Affirmed.

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied March 28, 1986, and appellants' petition for review by the Supreme Court was denied June 4, 1986.

---

[6]We do not imply that all conduct prohibited by the Unfair Practices Act can necessarily, without more, be committed by adjusters, as opposed to insurance carriers. Our decision is limited to those specific portions of the act before us. (§ 790.03, subds. (h)(1)-(5).)

*See footnote, *ante,* page 836.