[No. D009427. Fourth Dist., Div. One. Feb. 14, 1990.]

JAMES HENRY et al., Plaintiffs and Appellants, v.

ASSOCIATED INDEMNITY CORPORATION et al., Defendants and Respondents.

**[Opinion certified for partial publication.[1]]**

---

[1] Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of part II(B).

**COUNSEL**

Epsten, Cornelius & Grinnell and Douglas W. Grinnell for Plaintiffs and Appellants.

Klinedinst & Fliehman, Donald R. McKillop, Cummins & White and Susan B. Friend for Defendants and Respondents.

**OPINION**

**HUFFMAN, J.**—Plaintiffs James Henry and Annie Gutierrez (collectively Henry) appeal orders dismissing their second amended complaint (the complaint) after the trial court sustained without leave to amend separate demurrers by defendants Associated Indemnity Corporation, known as Fireman's Fund Insurance Company (Fireman's), and Mayflower Insurance Company, Ltd. and its adjuster, Underwriters Adjusting Company (collectively the Mayflower defendants, except where it is necessary to refer separately to Mayflower and Underwriters).

Henry is the owner of a residence in Bonita which for some years has been undergoing soil subsidence distress and is slowly collapsing. He sued his insurers, Fireman's and Mayflower, who had successively issued all-risk policies on the home, on bad faith insurance theories after they each denied coverage for his property damage claim. The trial court found the complaint fatally defective on a number of grounds, chiefly a lack of timely filing under one-year suit limitations provisions contained in the respective policies.

We conclude Henry has successfully alleged his action was timely filed in light of the nature of the property damage which the home is undergoing, and reverse the orders of dismissal as to the bulk of the pleading against the two insurers after first discussing the recent development of case law in the first party insurance context after *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58]. However, only one cause of action against the adjuster, Underwriters, can stand (intentional infliction of emotional distress), and we have also concluded the trial court correctly recognized Henry's cause of action for breach of fiduciary duty against all defendants is unsupported by case law and properly sustained that demurrer without leave to amend. We thus affirm in part and reverse in part.

## Factual and Procedural Background

### A

### The Property Purchase

Henry bought the subject residence in March 1984 from Mr. and Mrs. Heard. In a separate action (Henry v. Heard (Super. Ct. San Diego County, 1987, No. 582260)) he sued the Heards for rescission and damages for misrepresentation, alleging Heard misrepresented to him there were no cracks in the concrete slab or the walls of the residence, whereas the true facts were that such cracks existed, indicating the residence is structurally unsound.[2]

### B

### The Subject Complaint

The pleading which we must examine, the second amended complaint, is framed in seven causes of action. As against Fireman's, the theories alleged, as numbered, were: (1) unfair claims and settlement practices (Ins. Code, § 790.03),[3] (2) breach of the implied covenant of good faith and fair dealing, (6) breach of insurance contract, and (7) intentional infliction of emotional distress. (In addition, as noted *infra,* at footnote 5, Henry attempted in his first amended complaint to allege breach of fiduciary duty, but Fireman's demurrer was sustained without leave to amend.)

As against the Mayflower defendants, the causes of action alleged, as numbered, were: (3) unfair claims and settlement practices (§ 790.03), (4) breach of the implied covenant of good faith and fair dealing, (5) breach of fiduciary duty, (6) breach of contract, including both a traditional theory against Mayflower for breach of insurance contract and a third party beneficiary theory against Underwriters, arising out of its claims adjustment agreement with Mayflower, and (7) intentional infliction of emotional distress.

---

[2] Henry's separate action against the Heards was never formally consolidated with the action before us, although it was treated as a related case set to trail any trial that occurred on this action. As we have established by taking judicial notice of the superior court file, the only action actually consolidated with this action (in September 1988, before the rulings which we review, except as to breach of fiduciary duty against Fireman's) is the Heards' own bad faith insurance action against Fireman's (Heard v. Fireman's Fund Insurance Companies (Super. Ct. San Diego County, 1988, No. 595412).) (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[3] All statutory references are to the Insurance Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

C

Henry's Alleged Facts

We summarize the facts alleged, which are deemed admitted by the demurrer and which must be liberally construed with a view to determining if Henry is entitled to any relief from the courts (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572, fn. 4 [108 Cal.Rptr. 480, 510 P.2d 1032]): Fireman's insured Henry's property with an all-risk property insurance coverage policy that was in effect from March 15, 1984, through July 31, 1985. From July 31, 1985, the Mayflower defendants insured the same property with the same type of policy, with Underwriters acting on behalf of Mayflower in carrying out Mayflower's legal obligations as an insurer. To describe the property damage that occurred, Henry makes the following allegations: "10. Plaintiffs are informed and believe, and thereon allege, that *during the aforesaid policy period, the subject property experienced substantial property losses and damages, including:* the building was damaged, producing damage to dwelling and apartment structures, including cracks, separations, and elevation differences in walls, floors and ceilings; concrete slabs were damaged, producing damage to other structures, fixtures, and personal property; the walls, wall systems, slabs, driveway, footings, stucco, drywall, and walls cracked, separated, tilted and failed, causing damage to other structures and personal property; the dwelling and other structures collapsed; the structural elements of the dwelling experienced cracking, causing damage to other structures and personal property; the property experienced loss and damage from inadequate drainage, from moisture, dampness, seepage and heavy water flow, damaging structures and personal property; the soils, fill, earth, and ground were damaged, failed, sank, settled, collapsed, and caused cracking and separating; the structural members, including beams and columns were damaged and failed, producing structural sagging, cracking, and extraordinary stresses, strains, and deflections, damaging the dwelling and structures, fixtures and personal property, and creating a hazardous condition of structural inadequacy to withstand earthquakes; the soils supporting the dwelling and structures were damaged and failed, producing structural damage to the structures, fixtures and personal property.

"11. *In short, Plaintiffs' home is slowly being pulled apart and is collapsing and has been pulling apart and collapsing for several years and was collapsing during the aforesaid period during which Defendant* FIREMANS FUND insured Plaintiffs' home.[4] The aforementioned damages are not just 'set-

---

[4] In the cause of action for unfair claims and settlement practices against the Mayflower defendants, Henry incorporates these same allegations and states the same damage also occurred while Mayflower's policy was in effect.

tling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings.' The entire residence is affected. *The aforementioned property losses occurred in a gradual, progressive, continual, evolving fashion. Plaintiffs did not realize the true extent of the aforesaid damages and losses until approximately 1987. At no time prior to August 1987 had such damages and losses manifested to such an extent that they would put a reasonable person on notice that an insurance claim should be filed.* Upon learning of said damages and losses, and the true extent thereof, Plaintiffs promptly gave notice of said damages and claims to Defendant *FIREMANS FUND.*" (Italics added.)

Some seven months after making his claim with the insurers, Henry filed this action. He alleges in the first and third causes of action his claims were handled in such a manner as to violate section 790.03, subdivisions (h)(1) (misrepresentations of pertinent facts or policy provisions), (h)(3) (lack of reasonable standards for the prompt investigation and processing of claims), (h)(5) (failing to effectuate prompt and fair settlement where liability is reasonably clear), and (h)(13) (failing to promptly explain the basis of denial of the claim).

The same conduct as previously described and more is alleged to have constituted breaches of the covenant of good faith and fair dealing (second and fourth causes of action). In addition, Henry alleges Fireman's had a conflict of interest in its investigation of the claim in that it also insured the previous owners, the Heards.

In the fifth cause of action, and earlier in the first amended complaint, Henry generally alleged breach of fiduciary duty on the part of the two insurers, claiming he was invited and encouraged by them to trust them, to rely on their honest and reliable claims processing services, and to allow the insurers control of Henry's property rights and "affairs therein." From these facts, Henry pleads a fiduciary relationship of trust and confidence arose.

Specifically with regard to the breach of fiduciary duty claim against Underwriters, Henry alleges that because of the close business relationship between Mayflower and Underwriters, he and members of the public were unable to distinguish between Mayflower and Underwriters for the purpose of pursuing their legal rights. He attaches as an exhibit a sample advertisement by Mayflower and Underwriters promising good service, and then alleges he was a third party beneficiary of the claims adjustment contract between Mayflower and Underwriters, and is thus entitled to fiduciary duties in the form of fair and good faith performance of the contractual obligations undertaken by those two entities to Henry and to each other.

In the sixth cause of action, traditional breach of contract theories are alleged with respect to the two contracts of insurance, as well as an innovative third party beneficiary theory arising from the Mayflower-Underwriters contractual relationship. Henry pleads he is entitled to performance of all these insurance contracts in the form of fair and expeditious investigation and adjustment of his losses so that he is not deprived of the benefits of the agreements.

Finally, intentional infliction of emotional distress is charged against all defendants by incorporating all prior allegations and stating that their course of conduct as previously described was outrageous and caused Henry severe emotional distress.

## D

### Procedural History

The pleading history of this matter is quite complex. The original complaint initiating the action now before us was filed against Fireman's and the Mayflower defendants on March 10, 1988. Both Fireman's and Mayflower answered, while Underwriters demurred. In response, Henry filed the first amended complaint, which both Mayflower defendants answered, while Fireman's demurred. The court (by Judge Adams) sustained this demurrer without leave as to the cause of action for breach of fiduciary duty against Fireman's, overruling the balance of the demurrers.[5] Fireman's then answered the first amended complaint, while the Mayflower defendants moved for judgment on the pleading. In response, Henry with leave of court filed the second amended complaint, which was successfully demurred to by Fireman's on the basis of lack of compliance with a contractual one-year suit limitations provision,[6] resulting in the order of dismissal which we review. (Code Civ. Proc., §§ 430.10(e), 581(f)(1).)

---

[5] Although the minute order from that hearing included in the record indicates Judge Adams granted leave to amend as to the third cause of action alleging breach of fiduciary duty, the parties agree the actual ruling was to sustain the demurrer without leave to amend, and we have approached the issues with that assumption. Judicial notice of the superior court file (Evid. Code, §§ 452(d), 459(a)) reveals no formal order was prepared to clarify the ruling, nor is any such order or reporter's transcript included in our record. We review this ruling as subsumed in the judgment of dismissal ultimately awarded to Fireman's.

[6] The clause in the Fireman's policy setting forth the one-year suit limitations provision reads as follows: "Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss or damage."

The Fireman's policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of use of this property."

As a condition of the policy, Fireman's defines the policy period: "This policy applies only to loss under Section I [the property damage portion] . . . which occurs during the policy period."

Subsequently, the Mayflower defendants brought their own demurrers to all causes of action of the complaint against them (except for the emotional distress claim) based on a number of theories, including the one-year suit limitations provision,[7] the applicability of the leading bad faith insurance case of *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, Underwriters' nonparty status as to the insurance contract, and on the basis no cause of action for breach of fiduciary duty could be stated. At the hearing on the demurrers to the second amended complaint, a declaration by Mayflower's counsel requesting sanctions incorporated a prior counsel's declaration which in turn incorporated documents attaching as an exhibit and requesting judicial notice of Henry's misrepresentation complaint against the Heards. Although a companion motion for summary judgment or adjudication was noticed to be heard along with the Mayflower defendants' demurrer, it had been continued ex parte to a future date by the time of the hearing on demurrer; its procedural history and statement of facts were incorporated into the demurring papers, and it also requested judicial notice of the Heard action.

■■■■ The trial court (Judge Midlam) in a burst of enthusiasm sustained the demurrers without leave to amend as to the entire pleading (including the cause of action to which no demurrer was brought), resulting in the other order of dismissal now on review.[8] The court expressly found manifestation of damages had occurred in 1984-1985 and the action was thus time-barred.

In addition to appealing the orders of dismissal, Henry appeals the trial court's denial in part of his motion to tax all costs claimed by Fireman's on the basis they were excessive and improper. Fireman's verified memoran-

---

[7] The Mayflower policy provisions are similar to Fireman's. Its one-year suit limitations clause reads: "Legal Action Against Us. No legal action shall be brought against us unless you have first complied with all terms of this policy. You also agree to bring any action against us that relates to Part 3 ['Damage to Property'] within one year after a loss occurs."

Mayflower's definition of property damage is "physical injury to or destruction of tangible property. This includes: (a) loss of use of this property. (b) loss of use of tangible property which has not been physically injured or destroyed."

The general conditions of the policy state, in part: "Losses or bodily injury or property damage are covered only if they occur while this policy is in effect."

[8] Even though no demurrer was brought by the Mayflower defendants as to the seventh cause of action for emotional distress, the issue of the sufficiency of this theory was not waived. Although an appellate court will normally refuse to consider points not raised below, questions of law as to failure to state a cause of action may always be reached on appeal. (*Goodley* v. *Sullivant* (1973) 32 Cal.App.3d 619, 626 [108 Cal.Rptr. 451] disapproved on other grounds in *Hackethal* v. *Weissbein* (1979) 24 Cal.3d 55, 61, fn. 5 [154 Cal.Rptr. 423, 592 P.2d 1175, 9 A.L.R.4th 791].)

dum of costs included, among other items, $187.90 for deposition costs and $128.90 for service of process. The trial court allowed these costs while disallowing costs incurred in the consolidated action and other items. Henry complains this ruling was error because Fireman's was not required to prove the propriety of the claimed costs.

## DISCUSSION

Our first task in analyzing the plethora of issues raised by this appeal is to determine to what extent *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, permits Henry to pursue this first party bad faith insurance action, since the other issues raised (e.g., timeliness) may arguably be moot as to the statutory causes of action governed by that decision. Once we resolve the question of the extent to which *Moradi-Shalal* is controlling, we shall separately address the issues of the timeliness of the action and the viability of the breach of fiduciary duty theory alleged. ■ First, however, we cite basic rules of review of a ruling on demurrer: "The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. [Citation.] The allegations are regarded as true, and are liberally construed with a view to attaining substantial justice. [Citations.] [¶] The reviewing court is not concerned with a plaintiff's possible inability to prove the allegations, but only that the party may be entitled to some relief. [Citations.]" (*Abari* v. *State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530, 534 [252 Cal.Rptr. 565].)

### I

### *Moradi-Shalal* Authority

#### A

#### Survival of Bad Faith Theories Against the Insurers

We do not write on a clean slate in interpreting *Moradi-Shalal* in the first party context. ■ In *Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833 [262 Cal.Rptr. 106], this court held that not only is the reasoning of *Moradi-Shalal* which bars the use of section 790.03 as the basis for a statutory cause of action by third party claimants equally applicable to first party claimant-insureds; moreover, "the Supreme Court's ruling of nonretroactivity for pending bad faith cases is applicable to 'first party' as well as 'third party' actions." (*Zephyr Park, supra,* 213 Cal.App.3d at pp.

834-835.)[9] In reaching our conclusion, we discussed a number of considerations, including the relationship of common law and statutory causes of action in this area, the lack of any requirement of a final judgment· determining liability in the first party context, the need for symmetry in rules affecting similarly situated litigants, and the closer relationship between the insurer and its insured than exists between an insurer and a third party claimant. (*Id.* at pp. 837-841.)

We cannot improve upon *Zephyr Park's* analysis, and although we are aware the Court of Appeal for the Sixth District has reached a contrary conclusion in *Industrial Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1093 [257 Cal.Rptr. 655], we believe our opinion in *Zephyr Park* is correct and continue to adhere to it here. Under this approach, after *Moradi-Shalal,* Henry remains entitled to pursue his causes of action for unfair claims and settlement practices against the insurers Fireman's and Mayflower under section 790.03 (first and third causes of action); whether those claims were timely filed will be discussed *infra,* in part II.[10]

In assessing the validity of the causes of action alleged against the insurers Fireman's and Mayflower for breach of the implied covenant of good faith and fair dealing, breach of contract, and intentional infliction of emotional distress, we are guided by the statements of the Supreme Court in *Moradi-Shalal* that its decision was not intended to preclude the rights of third party claimants to pursue traditional common law theories against insurers, such as fraud and infliction of emotional distress; moreover, insureds may also prosecute such claims against their insurers, in addition to theories of breach of contract or breach of the implied covenant of good faith and fair dealing. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at pp. 304-305.) Therefore, Henry's causes of action against his insurers for breach of the implied covenant, breach of contract, and intentional infliction of emotional distress are unaffected by the advent of the rules announced in *Moradi-Shalal,* and insofar as they were timely filed, may be pursued in this action, as will be discussed in part II, *infra.*

B

Survival of the Bad Faith Theories Against Underwriters

Henry makes two different allegations about the nature of Underwriters' business dealings with him: in the bad faith and breach of the implied

---

[9] For a full definition of the distinction between the terms "first party" and "third party" in the insurance context, we refer the reader to the discussion in *Zephyr Park, supra,* 213 Cal.App.3d 833, 834-835, footnote 2.

[10] We discuss separately the validity of the causes of action alleged against the adjuster Underwriters in part I(B), *infra.*

covenant causes of action, he alleges: "At all times relevant hereto there was a contract between UNDERWRITERS and MAYFLOWER pursuant to which UNDERWRITERS would carry out MAYFLOWER'S legal duties whenever MAYFLOWER'S insureds presented claims under policies issued by MAYFLOWER. At all times relevant hereto, Plaintiffs were the intended third-party beneficiaries of said contract."

In the causes of action for breach of fiduciary duty and breach of contract, Henry alleges simply that there was a claims adjustment contract between Underwriters and Mayflower which gave him certain rights. ■ Our duty is to analyze the whole of these allegations to determine if Underwriters, an adjuster, is properly subject to potential liability in the third cause of action brought under section 790.03, as "engaged in the business of insurance." (§ 790.01.)

Several cases decided by the courts of appeal before *Moradi-Shalal* held independent insurance adjusters acting on behalf of insurance carriers qualified under section 790.01 as "engaged in the business of insurance" and were thus subject to a private right of action. (*Davis* v. *Continental Ins. Co.* (1986) 178 Cal.App.3d 836 [224 Cal.Rptr. 66]; *Bodenhamer* v. *Superior Court* (1986) 178 Cal.App.3d 180 [223 Cal.Rptr. 486]; see Cal. Practice Guide: Bad Faith (Rutter Group 1989) § 9:140, at pp. 9-34 through 9-35.)[11] ■ Those decisions, however, are not binding under principles of stare decisis on this court, a court of the same level, and we decline to follow them. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 772, at pp. 740-742, and cases cited.)

■ In light of the stringent restrictions placed upon statutory causes of action by *Moradi-Shalal,* we think it is evident which way the Supreme Court will decide this issue when it expressly does so. We consider Underwriters' relationship to Mayflower, as pled, to be akin to an agency or employee relationship, and do not believe a separate right of action under section 790.03 against Underwriters now exists or ever did.

Moreover, with respect to those theories announced by the Supreme Court to be exempt from the ban of *Moradi-Shalal* (e.g., breach of contract and of the implied covenant of good faith and fair dealing), only the intentional infliction of emotional distress theory properly survives as against Underwriters. There was no direct contractual relationship between Henry

---

[11] Cf. *Richardson* v. *GAB Business Services, Inc.* (1984) 161 Cal.App.3d 519 [207 Cal.Rptr. 519] (an independent adjuster hired by a self-insurer to handle liability claims is not "engaged in the business of insurance" and is not subject to a private right of action under section 790.03); accord *Santiago* v. *Employee Benefits Services* (1985) 168 Cal.App.3d 898 [214 Cal.Rptr. 679] (as to the adjuster's employees and attorneys).

and Underwriters from which either a breach of the covenant of good faith and fair dealing or a breach of contract action could properly spring. (See *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 576; *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [169 Cal.Rptr. 691, 620 P.2d 141].)

With respect to Henry's third party beneficiary contractual theory, we note merely that there is no authority for such a cause of action, and that the Mayflower-Underwriters claims adjustment contract can in no sense be said to have been made for the express benefit of a third person policy-holder, such as Henry, as would be required under Civil Code section 1559.[12] That contract contemplated that adjusting services would be provided for the respective benefit of the insurer and the insured, depending on the facts of the individual claim; it did not contemplate Henry's claim would be successful or impose any new duties to Henry other than those which inhere in the actual contract of insurance. Therefore, the trial court correctly concluded the sixth cause of action was not stated against Underwriters.

Consequently, of the theories alleged against Underwriters, only the cause of action for emotional distress is adequately stated. (See pt. III, *infra,* for discussion of Henry's breach of fiduciary duty theory.) However, since its allegations clearly arise from the same facts as the various claims on the policy (see *Lawrence* v. *Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565, 575 [251 Cal.Rptr. 319]; *Abari* v. *State Farm Fire & Casualty Co., supra,* 205 Cal.App.3d 530, 536), we next discuss whether the trial court correctly concluded any form of action on the policy was time-barred by the one-year suit limitations provisions.

## II

## Timeliness of the Action

### A

### Introduction

The law on the timeliness issue, like the soil beneath Henry's house, is unsettled. This difficult issue, the applicability of a one-year suit limitations provision in an insurance policy to continuous and progressive property damage such as is alleged here, is now before the Supreme Court in three cases arising out of this court. (*Prudential-LMI Commercial Insurance* v.

---

[12] Civil Code section 1559 provides: "WHEN CONTRACT FOR BENEFIT OF THIRD PERSON MAY BE ENFORCED. A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

*Superior Court* (1989) 211 Cal.App.3d 1131 [260 Cal.Rptr. 85], review granted Sept. 21, 1989 (S011415); *Fire Ins. Exchange* v. *Superior Court* (1989) 212 Cal.App.3d 39 [260 Cal.Rptr. 299], review granted Sept. 21, 1989 (S011489); *Farmer's Group Inc.* v. *Superior Court,* review granted Oct. 26, 1989 (S011955) [petn. for writ of mandate den. without opn. by this court.].)

B

Analysis*

. . . . . . . . . . . . . . . . . . . . .

III

Breach of Fiduciary Duty Theory

Finally, even though we conclude this action was timely filed in compliance with the one-year suit limitations provision, we must examine whether there is any basis in law for the breach of fiduciary duty theory alleged against both the insurers and Underwriters. ▇ We first note that as against Underwriters, this theory is based on the same third party beneficiary contract theory we found meritless in part I(B), *ante,* and as such, no adequate basis for this theory is pled. (See *Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 449-451 [208 Cal.Rptr. 511].)

We also find no support in case law, other than dicta in a few Supreme Court cases,[16] which would support such a theory as to the insurers. In *State Farm Fire & Casualty Co.* v. *Superior Court* (1989) 216 Cal.App.3d 1222, 1226-1227 [265 Cal.Rptr. 372] (petn. rehg. den.), this court described the peculiar and limited nature of the insurer-insured relationship: "The relationship between an insurer and an insured is akin to a fiduciary relationship. The insurer is bound to conduct itself with the utmost good faith for the benefit of its insured. (*Shultz Steel Co.* v. *Hartford Accident & Indemnity Co.* (1986) 187 Cal.App.3d 513, 519 [231 Cal.Rptr. 715], *Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 444-446 [208 Cal.Rptr. 511].) However, the protection afforded by that relationship is not unlimited (*Shultz Steel Co.* v. *Hartford Accident & Indemnity Co., supra,* at

---

*See footnote 1, *ante,* page 1405.

[16] *Frommoethelydo* v. *Fire Ins. Exchange* (1986) 42 Cal.3d 208, 215 [228 Cal.Rptr. 160, 721 P.2d 41]; *Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d 809, 820; also see *Spindle* v. *Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 712 [152 Cal.Rptr. 776].

p. 519), and the insurer has no duty totally to disregard its own interests when they conflict with the insured's interests (*Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 647 [39 Cal.Rptr. 731, 394 P.2d 571]; see also *Merritt* v. *Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 873-874 [110 Cal.Rptr. 511])."

■ With regard to the specific allegations of Henry's complaint, the letter attached as an exhibit to the complaint, purporting to show the creation or evidence of a special relationship that was fiduciary in nature, does not reveal anything other than an ordinary arm's-length business relationship between the insured and the insurers and its agents. We do not believe Henry has successfully alleged facts showing these insurers held themselves out as fiduciaries in such a way as to justify Henry's alleged extensive reliance on their "honesty, integrity and fidelity" or to enhance their existing duties under their contracts. Accordingly, the trial court orders sustaining these demurrers without leave to amend were proper.

DISPOSITION

The orders of dismissal are reversed in their entirety except for the following causes of action, as to which those orders are affirmed:

As to defendant Fireman's: Third cause of action of the first amended complaint, breach of fiduciary duty.

As to defendant Mayflower: Fifth cause of action of the second amended complaint, breach of fiduciary duty.

However, as to defendant Underwriters, the orders of dismissal are affirmed in their entirety with this exception: Seventh cause of action of the second amended complaint, intentional infliction of emotional distress (reversed).

The trial court's order for costs is reversed as there is not yet any prevailing party.

Each party is to bear its own costs on this appeal.

Benke, Acting P. J., and Froehlich, J., concurred.

A petition for a rehearing was denied March 5, 1990.