[Civ. No. 26293. Fourth Dist., Div. One. Apr. 27, 1983.]

THOMAS W. FOWLER et al., Plaintiffs and Respondents, v.
JOHN M. ROSS, Defendant and Appellant.

474

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

COUNSEL

John M. Ross, in pro. per., for Defendant and Appellant.

McLean & McLean, Donald F. McLean, Jr., and Corinne D. Clark for Plaintiffs and Respondents.

OPINION

**COLOGNE, J.**—This action was instituted by Thomas W. Fowler, Donna M. Fowler, Janet P. Hall, Martin Kennedy and Sharon L. Kennedy, as sellers, against John M. Ross, as buyer, relative to an agreement to purchase certain real property on which the sellers had agreed to build a house according to specifications. The first amended and supplementary complaint sought rescission, a declaration of rights under the contract and damages for defamation which allegedly occurred during the dealings between the parties. The buyer answered and made a timely request for a jury trial but, before the case went to trial, the sellers dismissed certain of the causes of action, leaving for resolution only those causes of action for rescission and declaratory relief and the court denied the request for a jury. Judgment was entered in favor of the sellers after the finding Ross failed to perform a condition precedent and he was not entitled to any rights under the agreement. He appeals.

On August 25, 1977, the parties executed an agreement for the sale and purchase of certain residential property on certain conditions among which was a promise by the buyers to provide an irrevocable written loan commitment. The exact language of that undertaking is: "7. On or before the fifteenth day after the notice of completion is filed with the County Recorder in the County of San Diego, the buyer will deposit to the escrow the remaining purchase monies. This purchase escrow will close and record not later than two business days after deposit of said funds. Within 45 days of the signing of this agreement, buyer will provide written verification to seller the source of these funds. If the buyer cannot provide an irrevocable written committment [*sic*] during the 45 day period, the buyer will release the seller from his obligation of selling the property to the buyer."

Pursuant to this contract of sale, on September 15, 1977, the parties executed escrow instructions which, among other provisions, stated: "The parties hereto acknowledge that their agreement has been and continues to be that the buyer has deposited $23,000.00 with the seller in connection with this transaction and has applied for a $100,000.00 loan, which is expected to be approved on or before October 11, 1977, and that the balance of $31,500.00 due to the sellers shall be deposited in escrow within 15 days from the recording of the notice of completion of the residence the subject of this agreement, or sooner at the buyer's election. On or before October 11, 1977, the buyer is to provide the seller with written verification of the source of the buyer's closing funds. If the buyer cannot provide an irrevocable written verification of the source of closing funds, the seller has the option of terminating the agreement between the parties and the buyer agrees to release the seller from the obligation to sell the subject residence to the buyer."

On December 2, 1977, the sellers gave notice that in view of the fact the loan commitment had not been provided, the agreement was terminated.

Ross contends first the superior court has no jurisdiction since he had first filed his own action in this controversy in the federal courts. Based on diversity of citizenship, the United States District Court in Michigan accepted the case and transferred the matter to the district court in San Diego, a more convenient forum, for further proceedings. While we may take judicial notice of some activity in that case, the matter has not yet gone to trial and awaits a trial date setting.

Ross asserts the rule applicable here is that which provides where two or more tribunals have concurrent jurisdiction, the tribunal which first asserts jurisdiction retains it to the exclusion of all others in which the action might have been initiated (*Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 81 [293 P.2d 18]). That rule, however, is applicable where the tribunals are within the same state but the rule does not apply where jurisdiction is taken by a state court and a federal court. The rule is well established that state and federal courts will not interfere with or try to restrain each other's proceedings (*Donovan* v. *City of Dallas* (1964) 377 U.S. 408, 412 [12 L.Ed.2d 409, 413, 84 S.Ct. 1579, 1582]).

" 'The forbearance which courts of coordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore, of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the

same system, so far as their jurisdiction is concurrent; and although they coexist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues.'

"· . . . . . . . . . . . . . . . . . . . .

"But a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res judicata by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case. The rule, therefore, has become generally established that where the action first brought is in personam and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded. [Citations.]" (*Kline* v. *Burke Const. Co.* (1922) 260 U.S. 226, 229-230 [67 L.Ed. 226, 230, 43 S.Ct. 79, 81, 24 A.L.R. 1077].)

 Under the facts of this case, both the federal and state courts have acquired jurisdiction but neither acquires exclusive authority and each may proceed at its own pace until one or the other reaches final judgment and becomes res judicata on the issue. The California court does have jurisdiction to proceed as it did and its judgment is valid (see 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 296, pp. 837-838).

 Ross next complains he was denied a jury trial.

 The right to a jury trial is a basic part of the state and federal systems of jurisprudence (art. I, § 16, Cal. Const.; Amend. VII, U.S. Const.; *Lofy* v. *Southern Pacific Co.* (1954) 129 Cal.App.2d 459, 462 [277 P.2d 423]). The right thus guaranteed is that of a jury trial as it existed in common law. The right is available in actions at law but is not available in actions in equity (*In Matter of Coburn* (1913) 165 Cal. 202, 219 [131 P. 352]). In determining whether the action is in law or in equity, the court should ascertain the

nature of the rights actually involved as revealed by the pleadings and the facts (see generally, 41 Cal.Jur.3d, Jury, § 7). ■ There is no right to a trial by jury where the gist of the action is for the enforcement of a right cognizable only in equity (*Jaffe* v. *Albertson Co.* (1966) 243 Cal.App.2d 592, 608 [53 Cal.Rptr. 25]).

■ An action for declaratory relief is an equitable proceeding and the powers of a court are as broad and extensive as those exercised by such court in any ordinary proceeding in equity (*Culbertson* v. *Cizek* (1964) 225 Cal.App.2d 451, 462 [37 Cal.Rptr. 548]). ■ It is elementary that questions relating to the formation of a contract, its validity, its construction and effect, excuses for nonperformance, and termination are proper subjects for declaratory relief (*Foster* v. *Masters Pontiac Co.* (1958) 158 Cal.App.2d 481, 486 [322 P.2d 592]). Determination of these rights and duties in the sales agreement here were properly before the court in this action in equity for declaratory relief (*Culbertson* v. *Cizek, supra,* 225 Cal.App.2d 451, 462).

■ Unlike an action in law which ordinarily seeks damages, the plaintiffs here sought only a declaration of their rights and duties under the contract.[1] Ross filed no cross-complaint calling for relief other than a determination of his rights under the same contract. Ross told the court "[t]he case before this court requests only rescission," and that is what is reflected by the prayer of the complaint. (Cf. *Radinsky* v. *T. W. Thomas, Inc.* (1968) 264 Cal.App.2d 75, 78-80 [70 Cal.Rptr. 150], re enforcement of out of court rescission; see *Porter* v. *Superior Court* (1977) 73 Cal.App.3d 793, 798-801 [141 Cal.Rptr. 59].) This is purely equitable in nature and that is the only relief the court provided. The equitable nature of these determinations will be more apparent from the discussion that follows relative to the contractual interpretation the court was called upon to make. The gist of this action being equitable in nature, there exists no right to a jury trial.

■ In determining the rights of the parties, the court was obliged to determine whether the provision of the escrow instructions created an "option" in the strict sense or a "condition precedent." In addition, it was called upon to determine when performance by Ross had to be completed if not in strict compliance with the deadline imposed by the agreement. It must also determine whether the plaintiffs by their action were estopped to assert a deadline, and finally, whether the contract could be properly terminated because of the nonperformance of the condition precedent.

Ross contends the escrow provision clearly designates the sellers' right to an option and it had to be exercised on October 11, 1977, or it was lost. He asserts since it was not exercised on that precise date, it was lost.

---

[1]The judgment awarded damages here, not for any "breach of contract" but for costs and fees relative to certain earlier court proceedings.

The court found Ross' obligation to provide the loan commitment was a condition precedent. While the court found this was a condition precedent, an interpretation with which we would agree, we believe the designation with either type of terminology provides the same result.

■ Where an escrow agreement provides for an act to be done or an option is to be exercised, in the absence of express terms or necessity by reason of the nature of the contract, the court will provide the parties a reasonable time in which to perform. In *Katemis* v. *Westerlind* (1953) 120 Cal.App.2d 537, at page 543 [261 P.2d 553], the court stated: "Defendant contends that since the time fixed for such performance in the escrow instructions was prior to March 1, 1952, the arrival of plaintiffs' funds on March 3, 1952, was too late and thus defeats their right to specific performance. This argument is untenable, since nowhere is it clearly manifest that deposit of the money by plaintiffs prior to March 1, 1952, is the essence of the contract. Professor Pomeroy, in his treatise on Specific Performance, states 'the prescribing a day at or before which, or a period within which, an act must be done, even with the stipulation that it shall be done at or before the day named, . . . does not render the time essential with respect to such an act.' (§ 392, p. 835.) The general rule in equity is that time is not of the essence unless it has been made so by its express terms or is necessarily so from the nature of the contract. (Williston on Contracts, vol. III (rev.ed.1936), p. 2385.) In *Miller* v. *Cox*, 96 Cal. 339 . . . , it is stated that the intent to make a particular date, or time, 'the essence of the contract must be clearly, unequivocally and unmistakably shown by an express declaration. . . . In order to render time thus essential, it must be clearly and expressly stipulated that it shall be so; *it is not enough that a time is mentioned during which or before which something shall be done* [citations].' (P. 345.) This language . . . is in consonance with the modern view that *valuable contractual rights should not be surrendered or forfeitures suffered by a slight delay in performance unless such intention clearly appears from the contract or where specific enforcement will work injustice after a delayed tender. (Cockrill* v. *Boas,* 213 Cal. 490 . . . ; *Mathews* v. *Davis,* 102 Cal. 202 . . . .)" (Italics added.)

■ The language of the agreement here, while calling for a specific date for performance by Ross, does not provide a basis for making time to be of the essence for his performance. Had Ross performed in a reasonable time after October 11, the court would be obliged to enforce the contract. Although Ross was apparently given an extension to the end of November 1977, he failed to produce the loan commitment by that date. He admits he was unable to perform until December 12, over two months after the designated date for performance.

The agreement does not call for a specific time in which the "option to terminate" or "termination of rights" may be exercised by the sellers so, applying

a similar rule of law, a reasonable time must be allowed. Here it would appear an extension of time for Ross to obtain the loan commitment was discussed and he was given to the end of November. To expect further extension would not be reasonable, and the option to terminate exercised December 2 was proper. The record amply supports the trial court's conclusion the contract was terminated.

Ross asserts a plethora of other errors which deserve little or no mention. Return of the $23,000 deposited in escrow by Ross was not raised as an issue in the pleadings and is not properly before us. Ross' right to a return of those funds does not appear to be in dispute and is a matter not resolved by this case. If there is a dispute, it may well involve the liability of the escrow agent as well. The credibility of witnesses is a matter left to the determination of the trial judge. We will not examine the truth of assertions the resolution of which properly resides with the trier of fact. It was not error for the court to refuse to receive into evidence the unauthenticated document purporting to be a loan commitment when no proper foundation had been made. Finally, the fact that a copy of the memorandum decision was sent to one of the parties (as well as the attorneys) does not suggest any unethical communication with one of the parties nor can we find any prejudice providing a basis for reversal of the judgment.

Judgment affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied May 3, 1983.