[Civ. No. 25228. Third Dist. Aug. 28, 1986.]

CALIFORNIA STATE AUTOMOBILE ASSOCIATION,
INTER-INSURANCE BUREAU, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
ROBERT SOUSA et al., Real Parties in Interest.

## COUNSEL

Toy, Coleman & Davies, John R. Toy, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Michael J. Brady and Paul D. Herbert for Petitioner.

Parkinson, Wolf, Lazar & Leo, Richard B. Wolf and Robert M. Blake as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Anderson & Goff and Sharon Hoyle for Real Parties in Interest.

## OPINION

**CARR, J.**—Petitioner California State Automobile Association, Inter-Insurance Bureau (CSAA) seeks mandate directing the superior court to vacate

its order of May 30, 1985, overruling CSAA's demurrer, and to enter an order sustaining the demurrer to the first amended cross-complaint filed by real parties in interest, Robert and Twyla Sousa. We issued an alternative writ of mandate to permit review and resolution of the issues presented. After such review, we have concluded the relief sought should be denied.

## Factual and Procedural Background

On October 7, 1982, Twyla Sousa was injured in a three-car collision on Interstate 80 in Sacramento County. Her car was rear-ended by a vehicle driven by John Jewusiak, who was in turn hit by a car driven by an unidentified motorist who left the scene of the accident.

Sousa's insurance policy with CSAA included uninsured motorist coverage. Jewusiak was insured for liability insurance with Allstate Insurance Company. Sousa wrote to CSAA and Allstate in July 1983, specifying her injuries and demanding $14,555.26 in special damages and $30,000 in general damages. On October 6, 1983, Sousa filed a complaint against Jewusiak. In November 1983, Sousa sent an offer of compromise to both CSAA and Allstate, stating that based on the joint and several liability of Jewusiak and the unidentified motorist, she would settle the case for $26,000, $13,000 to be paid by each party. CSAA did not respond to this letter.[1] Allstate agreed to the settlement, paid Sousa $13,000 and the complaint was dismissed on December 20, 1983.

A month later, Sousa's attorney called CSAA to demand $13,000 in settlement of the uninsured motorist claim. CSAA replied that by settling her claim against Allstate without CSAA's consent, Sousa's uninsured motorist coverage was voided. Sousa's attorney was also advised that she must seek resolution of this dispute by arbitration pursuant to the policy provisions.[2]

Eight months later, on August 22, 1984, Sousa wrote CSAA requesting that her uninsured motorist claim be set for arbitration. On October 19, 1984, CSAA's counsel responded, renewing CSAA's assertion that Sousa

---

[1] Sousa asserts CSAA at some point offered $2,000 to settle this case.

[2] In this regard, the policy provided, "If any person making claim hereunder and the Bureau do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then, upon written demand of either, the matter or matters upon which such person and the Bureau do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the Bureau each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Part."

had no coverage because of her unauthorized settlement with Allstate and informing Sousa her request for arbitration was improper in that a demand for arbitration had to be made through the American Arbitration Association. Further that prior to any arbitration, the question of coverage *must* be determined; that the proper vehicle for such determination was a declaratory relief action. CSAA thereafter filed its complaint seeking a declaration that Sousa's settlement with Allstate relieved CSAA of any obligation to provide uninsured motorist coverage and that Sousa had no further rights under her policy regarding this loss.[3]

Sousa filed an answer and a cross-complaint for damages for CSAA's breach of its duty of good faith and fair dealing in failing to negotiate and settle with her.[4] CSAA demurred, contending Sousa's cross-complaint was premature in that it could not be brought until there was a final determination of the underlying dispute, in this case the uninsured motorist claim. Further, that prior to litigation of the uninsured motorist claim in arbitration, the issue of coverage must be resolved. The court sustained the demurrer with leave to amend. Sousa's amended cross-complaint was identical to the original except it alleged CSAA's wrongful acts occurred prior to the date Sousa settled with Allstate. CSAA again demurred; the court overruled the demurrer. This petition for mandate followed.

▪ Counsel has not cited to us, nor has our own research uncovered, any case considering the precise issue presented by this proceeding: whether an insured may file a cross-complaint for damages for tortious breach of the covenant of good faith and fair dealing in an action by the insurer for a declaration of rights as to coverage under the policy.

Citing *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] and its progeny, CSAA renews its contention that Sousa's claim for breach of good faith and fair dealing cannot be asserted until the issue of coverage is determined in the declaratory relief action and the liability, if any, and damages are determined in arbitration proceedings. We disagree.

---

[3]The exclusion clause of the policy relating to uninsured motorist coverage provided: "This policy does not apply . . . (b) to bodily injury to an insured, or care or loss of services recoverable by an insured, with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the Bureau [CSAA], make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor[.]" (See Ins. Code, § 11580.2, subd. (c)(3).)

[4]Neither party raises any issue concerning arbitration, although Sousa states, "If [CSAA] wants to arbitrate the claim prior to having the court hear the claim and cross-claim, defendant and cross-complainant Twyla Sousa would agree to such arbitration."

In *Royal Globe, supra,* the Supreme Court for the first time extended to a third party injured by an insured a cause of action against the insurer for violations of Insurance Code section 790 et seq., relating to unfair insurance practices. (*Royal Globe, supra,* 23 Cal.3d at pp. 888-890.)

Prior to *Royal Globe,* the only remedy afforded a third party for bad faith or unfair practices of an insurer was an assignment from the insured of that portion of the judgment in the underlying action which was in excess of the insurance policy's limits together with any bad faith rights of the insured against the insurer. The *Royal Globe* court concluded such a suit may not be sustained until the action between the insured and the injured party is finally determined and liability established. Several reasons were advanced for this limitation. Evidence Code section 1155 provides that evidence of insurance is inadmissible to prove negligence, thereby preventing the prejudicial use of the existence of insurance in an action against an insured. The court found that a joint trial against the insured and the insurer "would obviously violate both the letter and spirit of the [Evidence Code] section." (*Id.,* at p. 891.) Moreover, defense of the insured would be hampered by discovery conducted by the injured party. (*Id.,* at p. 892.) Finally, the court noted that the damages suffered by the third party can best be determined at the conclusion of the liability suit between the third party and the insured. (*Ibid.*) Subsequent decisions have affirmed these principles. (See, e.g., *Industrial Indemnity Co.* v. *Mazon* (1984) 158 Cal.App.3d 862 [204 Cal.Rptr. 885]; *Williams* v. *Transport Indemnity Co.* (1984) 157 Cal.App.3d 953 [203 Cal.Rptr. 868]; *Carr* v. *Progressive Casualty Ins. Co.* (1984) 152 Cal.App.3d 881 [199 Cal.Rptr. 835]; see also *Rodriguez* v. *Fireman's Fund Ins. Co.* (1983) 142 Cal.App.3d 46 [190 Cal.Rptr. 705] [settlement of suit against insured constitutes a final determination]; *Nationwide Ins. Co.* v. *Superior Court* (1982) 128 Cal.App.3d 711 [180 Cal.Rptr. 464] [liability not finally determined if appeal is pending].)

These cases are distinguishable from the present case in that each involves an injured third party suing an insurer for violation of the Unfair Practices Act. ██ ██ ██ ██ ██ This action is one by an insured against her own insurance company for breach of good faith and fair dealing.[5]

---

[5]Presumably plaintiffs herein in their cross-complaint are suing on the common law bad faith cause of action. The causes of action embody the same factors. The wrongs enumerated in Insurance Code section 790.03, subdivision (h) have been held to be "merely a codification of the tort of breach of the implied covenant of good faith and fair dealing as applied to insurance." (*General Ins. Co.* v. *Mammoth Vista Owners' Assn.* (1985) 174 Cal.App.3d 810, 822 [220 Cal.Rptr. 291]; *Richardson* v. *GAB Business Services, Inc.* (1984) 161 Cal.App.3d 519, 524 [207 Cal.Rptr. 519].) However, in *Muraoka* v. *Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107 [206 Cal.Rptr. 476], the Second District Court of Appeal implied that the distinction may be significant.

Nor is *Sych* v. *Insurance Co. of North America* (1985) 173 Cal.App.3d 321 [220 Cal.Rptr. 692], cited by petitioner at oral argument, applicable. *Sych* was an unfair practices action (Ins. Code, § 790.03) by a third party against the insurer after a verdict had been returned in favor of the insurer's insured in the underlying action. The court properly held a predicate to a third party's action against the insurer was a conclusive establishment of liability against the insured. A contrary holding would permit relitigation of the issue of the insured's liability.

CSAA urges we extend the holding of *Royal Globe* to the situation before us. We decline to do so. The theoretical basis for the *Royal Globe* decision has no relevance to this case. No potential discovery problems exists as no third party is involved. The prejudicial use of evidence of insurance is not a concern in a suit by an insured against an insurer.

CSAA correctly posits that no award can be made without first establishing that coverage exists. The solution to this problem lies not in holding Sousa's cross-complaint to be premature, but in determining the order in which these issues are to be decided. ■ An action for declaratory relief is a proceeding in equity (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 87, p. 114) in which the trial is by the court. (*Fowler* v. *Ross* (1983) 142 Cal.App.3d 472 [191 Cal.Rptr. 183]; *Jaffe* v. *Albertson Co.* (1966) 243 Cal.App.2d 592, 608 [53 Cal.Rptr. 25].) ■ The trial court is empowered to determine the order in which the issues to be determined are tried and may order the declaratory relief complaint tried before the cross-complaint. If CSAA's requested relief in the declaratory relief action is denied, and arbitration is determined to be the proper proceeding for determination of petitioner's damages, arbitration may proceed prior to trial on the cross-complaint. ■ ■ ■ ■ ■ In so holding, we note there is no prohibition to filing a cross-complaint in an action for declaratory relief.[6] ■ Moreover, complaints which combine causes of action for declaratory relief

---

[6]Code of Civil Procedure sections 426.30 and 428.10 define compulsory and permissive cross-complaints. Section 426.60, subdivision (c) provides that the rules relating to compulsory cross-complaints do not apply where the only relief sought is a declaration of rights and duties in an action for declaratory relief. Under this provision, an individual cannot be barred from bringing a cause of action after the issues raised in the action for declaratory relief have been determined. (See *Industrial Indemnity Co.* v. *Mazon, supra,* 158 Cal.App.3d at p. 866; *Russo* v. *Scrambler Motorcycles* (1976) 56 Cal.App.3d 112, 116-117 [127 Cal.Rptr. 913].) CSAA is correct when it asserts Sousa will suffer no harm if she is required to wait until after CSAA's action is concluded before bringing suit. However, CSAA misconstrues the effect of section 426.60, subdivision (c). It acts to *protect* a party's rights, not curtail them. While a party is not obligated to assert related causes of action in a cross-complaint to a suit for declaratory relief, there is no statutory prohibition against the filing of such a pleading.

with those for damages present similar problems which have been appropriately handled by trial courts.

A somewhat analogous situation was present in the recent case of *Brandt v. Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796], in which a cause of action by an insured to secure benefits under an insurance policy was combined with a cause of action for damages for breach of the covenant of good faith and fair dealing in refusing to pay benefits under the policy in question. The essential issue was whether attorney fees incurred in prosecuting the first cause of action were recoverable in the second. The court encountered no problems with the tandem causes of action. In holding the attorney fees are recoverable as damages in the bad faith cause of action, the court stated that while a postjudgment allocation and award of attorney fees by the court would be preferable, the matter could be presented to the jury with appropriate instructions that the insured could recover fees only if the jury first found he was entitled to recover on his bad faith cause of action, that such fees were reasonably necessary to collect benefits due under the policy and that the fees awarded "must not include attorney's fees incurred to recover any other portion of the verdict." (*Id.,* at p. 820.)

Though not expressly stated, the obvious inference is that if the two causes of action are tried together, the trier of fact must find favorably for the plaintiff on the first breach of contract action before moving onto the second cause of action for bad faith.

In the instant case, we have a possible additional factor of arbitration. This should not create problems for trial courts accustomed, as are our present day courts, to complex litigation in which the order of trial must be set by the court.

### DISPOSITION

The trial court properly overruled the demurrer to the cross-complaint. The petition for writ of mandate is denied. The alternative writ, having served its purpose, is discharged.

Evans, Acting P. J., concurred.

**BLEASE, J.,** Concurring and Dissenting—I concur in the result of the majority opinion insofar as it upholds overruling the demurrer of CSAA by the trial court. I respectfully dissent from the unnecessary suggestion that

the solution to the timing problem raised by CSAA is to try the declaratory relief complaint prior to trial of the cross-complaint.

As to the principal question, the majority opinion points to the heart of the matter: *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] is not controlling because the purpose of that holding is to serve the policy behind Evidence Code section 1155 and that policy is not implicated in this case. The fact of insurance cannot be suppressed in an action on a contract of insurance. Moreover, even if section 1155 were implicated, in a bilateral action this could not warrant a demurrer. The statutory basis for sustaining a demurrer in *Royal Globe* is misjoinder of parties, a ground for special demurrer. (Code Civ. Proc., § 430.10, subd. (d); see 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 923.) Here there is no such ground. There can be no claim of misjoinder of parties; the claim is really misjoinder of issues. Such "misjoinder" is not demurrable. As the majority opinion notes, a defendant has an unrestricted right to cross-complain against the plaintiff under Code of Civil Procedure section 428.10, subdivision (a). (Also see 5 Witkin, Cal. Procedure, *supra*, § 1090.) If there is a misjoinder of issues this furnishes no basis for a demurrer. The Legislative Committee comment to section 428.10, subdivision (a) says: "Any undesirable effects that might result from joinder of causes under Section 428.10 may be avoided by severance of causes or issues for trial under Section 1048 of the Code of Civil Procedure."

I part company from the majority at the point that they suggest the solution to CSAA's claim of misjoinder of issues is to try the declaratory relief cause of action before the cross-complaint. CSAA complains that the cross-complaint is premature because CSAA must first be afforded the opportunity to arbitrate issues entailed in the cross-claim, namely, liability of and damages owed by the uninsured motorist. Of course, what is really premature here is the inchoate claim of arbitration rights since no one seems to have properly invoked arbitration. Setting that aside, CSAA's argument goes nowhere on the priority issue. The Sousas' answer to the declaratory relief complaint tenders the same matter as the cross-complaint. The answer includes an affirmative defense alleging CSAA failed to negotiate in good faith with the Sousas and asserting that this bars CSAA from invoking the exclusion clause for third party settlements without written consent. The argument shoots itself in the foot. If this matter must wait on arbitration when tendered in the cross-complaint the same result should obtain regarding the main action when it is tendered in the answer. CSAA's declaratory relief claim should not be granted priority based on this argument.

Moreover, since the declaratory relief action appears to entail the same issues as the Sousas' cross-complaint, it may be appropriate to deny declaratory relief in any event. The office of declaratory relief is to set prospective controversies at rest in a cost effective manner. (See 5 Witkin, Cal. Procedure, *supra,* Pleading, § 817, p. 259.) "Hence, where there is an accrued cause of action for an actual breach of contract or other wrongful act [encompassing the same matters as a declaratory relief action], declaratory relief may be denied." (*Ibid;* also cf. Annot., Application of Declaratory Judgment Acts to Questions in Respect of Insurance Policies (1943) 142 A.L.R. 8, 40-50; see generally Note, *The Role of Declaratory Relief and Collateral Estoppel in Determining the Insurer's Duty to Defend and Indemnify* (1969) 21 Hastings L.J. 191, 195-204.) This tendency should gain force where, as here, declaratory relief may preempt issues subject to jury trial by forcing litigation in an equity proceeding.

I would defer any attempt to fully resolve the premature timing problems raised by CSAA and simply return the proceeding to the trial court for appropriate resolution when, and if, necessary.

Petitioner's application for review by the Supreme Court was denied December 11, 1986. Panelli, J., was of the opinion that the application should be granted.