Filed 3/20/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF RIVERSIDE,<br><br>    Cross-complainant and Appellant,<br><br>    v.<br><br>RLI INSURANCE COMPANY,<br><br>    Cross-defendant and Respondent. | D085905<br><br><br>(Super. Ct. No. CVR12203266) |

APPEAL from a judgment of the Superior Court of Riverside County, Chad W. Firetag, Judge. Reversed and remanded with instructions.

Office of the City Attorney, City of Riverside, Rebecca L. McKee-Reimbold, Jessica Rico-Zuber, Cecilia Rojas and Jacob Castrejon for Cross-complainant and Appellant.

Nicolaides Fink Thorpe Michaelides Sullivan, Matthew Joseph Hafey, Mark J. Sobczak and Yevgenia Altman for Cross-defendant and Respondent.

The City of Riverside (the City) appeals from a judgment of dismissal after the granting of a demurrer as to its cross-complaint against RLI Insurance Company (RLI). The City asserts the trial court erred by concluding that RLI was improperly joined as a party in an action against its insured, Design Services, Inc. (DSI) based on the general rule announced in *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 (*Royal Globe*) that a "plaintiff may not sue both the insurer and the insured in the same

lawsuit." (*Id.* at p. 891.)  The City contends this case is distinguishable in part because here, both DSI and the City are named insureds of RLI.  We agree, reverse the judgment of dismissal, and remand the matter to the trial court for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The present case arises from a tragic accident in which Ferial Harb was struck by a vehicle, driven by Brian Gene Bozarth III, while walking on or near a roadway in Riverside, California.  Harb died from his injuries.

## A.  The Harbs's Complaint

Ali Harb, Ibrahim Harb, and Lama Harb (collectively, the Harbs) filed a complaint against the City, the County of Riverside, the State of California, Brian Gene Bozarth III, and Melissa Bozarth, the owner of the vehicle (collectively, the Bozarths).  The Harbs asserted causes of action for dangerous condition of public property against the City, county, and state; negligence against the Bozarths; wrongful death against all defendants; and recovery under Code of Civil Procedure section 377.34 et seq. against all defendants.

As to the first cause of action for dangerous condition of public property, the Harbs alleged, in part, that the roadway where the accident occurred had been the site of numerous prior collisions; was unreasonably dangerous; lacked sufficient signs or signals; had inadequate visibility; and that the dangerous conditions were concealed.  The Harbs incorporated these same allegations into the third and fourth causes of action.

The City answered the complaint with a general denial and asserted numerous affirmative defenses, including that others contributed to any negligence or harm.

2

**B.     The City's Cross-complaint**

The City then filed a cross-complaint against numerous third-party contractors and consultants, including DSI, as well as an arborist, a landscape and design contractor, and their respective insurance agencies, including RLI.  The City included causes of action for indemnification, apportionment of fault, declaratory relief, breach of contract, and insurance bad faith.

In the operative second amended cross-complaint (the Cross-Complaint), the City alleged that it entered into an agreement with DSI, by which DSI agreed to provide professional consulting services for a citywide LED street light conversion project.  The contract required DSI to evaluate the street lighting, including on the street where the accident occurred, and provide professional services "to sequence the replacement of lighting" between 2016 and 2022.  The City alleged further that "DSI's assessment of the lighting compliance [on the street at issue] and its recommendation for LED replacement timing is, at least in part, challenged by the [Harbs] and the cause of the [accident at issue].  The conduct of DSI, e.g. sufficiency of compliant lighting visibility and recommendations for timing of replacement are the work that has, in part, prompted [the Harbs's] actions against the City; and, the contract between DSI and the City require DSI to provide it a defense and indemnity against [the Harbs's] action."

Regarding RLI, the City alleged that its agreement with DSI "required DSI to obtain insurance policies to protect the City against claims arising out of DSI's work, including their negligence," and that RLI—DSI's insurer— agreed to name the City as an additional insured on all RLI policies concerning the City's interests in its agreement with DSI.  "Certificates of Insurance were provided proving the City's status as an additional insured on DSI's insurance policies between 2016 for its work on the City's lighting,

3

including compliance of the lighting [on the street at issue]." The City tendered defense and indemnity to RLI. The City included at least some of the relevant policies, as well as an endorsement from RLI noting that the City was added as an additional insured. RLI refused "to defend and indemnify the City for [Harbs's] lawsuit against the City for dangerous condition on public property arising from the work of [DSI] under the contract," which was attached to the Cross-Complaint as an exhibit.

## C. RLI's Demurrer to the City's Cross-complaint

RLI demurred to the City's Cross-Complaint. RLI asserted that it was improperly joined as a liability insurer for cross-defendant DSI, and that the complaint did not state facts sufficient to constitute any cause of action.

As to the first contention, RLI argued, "[u]nder California law, an underlying third-party action against an insured cannot be joined with an insurance coverage lawsuit against that same defendant's insurer, because such a lawsuit necessarily informs the jury of the presence of insurance, which violates both the letter and spirit of California Evidence Code [section] 1155. The City can easily avoid the palpable prejudice to [DSI] by bringing a separate insurance coverage action if it wishes to litigate its alleged entitlement to additional insured coverage under the RLI policy issued to [DSI] (which RLI disputes)." The City relied primarily on *Royal Globe*, in which the California Supreme Court held that a cross-complainant "may not sue both the insurer and the insured in the same lawsuit," based on the "letter and spirit" of Evidence Code section 1155. (*Royal Globe, supra,* 23 Cal.3d at p. 891.)

Here, RLI argued further, the Harbs had sued the City, and the City had, in turn, sued both DSI and RLI in the same Cross-Complaint, alleging that DSI's "negligent provision of its professional consulting services" contributed to the accident at issue. Doing so, RLI asserted, directly violates

4

*Royal Globe*'s mandate against joining an insured and its insurer as defendants in the same liability action.

In its response, the City argued that RLI's reliance on *Royal Globe* was misplaced because the City alleged it was an actual insured of, and in contractual privity with, RLI. The City asserted it is not a third-party stranger to the contract and that it was not seeking to recover tort damages from RLI or its insured, DSI.[1] The City asserted its contract with DSI required that DSI provide general liability insurance naming the City as an additional insured, and that RLI, through its agent, provided the City with a certificate that conforming insurance was issued. Thus, its claims were based on RLI's denying the tender and unreasonably interpreting the relevant policy to deny the City its rights and benefits under the policy. Accordingly, the City asserted this case is more like *Royal Surplus Lines Ins. Co. v. Ranger Ins. Co.* (2002) 100 Cal.App.4th 193 (*Royal Surplus*), in which the court determined the general rule in *Royal Globe* did not apply to a first-party additional insured in an action against the named insured and the named insured's insurer. (*Royal Surplus,* at p. 200; see also 4 Cal. Insurance Law & Practice (2026) ch. 41, § 41.20.)

In addition, the City asserted a cross-complaint is generally considered to be a separate action from that initiated by the complaint, and that the proper approach if there was any potential for prejudice (i.e., by alerting the jury to a potential insurance claim) would be to sever or bifurcate the actions.

Finally, in its reply, RLI asserted *Royal Surplus* was inapt because there, the injured party had settled and was no longer part of the case,

---

[1] The City also agreed to dismiss the first two causes of action, for indemnification and apportionment, against RLI.

5

removing the potential for prejudice arising from the jurors being aware of a claim for insurance coverage.

**D.     The Trial Court's Ruling**

After considering the briefing and hearing argument from the parties, the trial court sustained RLI's demurrer without leave to amend, explaining:

> "The City has standing to bring its contract claims against RLI, assuming that a valid insurance policy was issued to Design Services naming the City as an additional insured.  However, the issue is whether RLI may be joined in the present liability action consistent with Evidence Code [section] 1155.  In *Royal Surplus,* relied on by the City, the Court held that there was no risk of prejudice under Section 1155 because the third-party plaintiffs' claims against the insured had settled.  ([*Royal Surplus, supra,*] 110 Cal. App. 4th at [pp.] 200–201.)  By contrast, in the present action, [Harbs's] wrongful death claims remain active.  As such, the Court finds the risk that Design Services or the City may be prejudiced by the jury's knowledge of the insurance policy remains.  Furthermore, bifurcation may not prevent the jury from learning that the alleged tortfeasor is insured since the insurance company would still be named party in the action, and discovery initiated by plaintiff against the insurer could conceivably hamper its defense of the insured."

The trial court noted that the remaining grounds for demurrer were moot, and that the ruling did not prevent the City from filing a separate action against RLI.  The court then entered a judgement of dismissal after demurrer as to RLI.

The City timely appealed.

## II.     DISCUSSION

The City's sole argument on appeal is that the trial court erred in determining that the City could not name RLI in its Cross-Complaint as a matter of law.

6

## A. Standard of Review

" 'On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.)  In doing so, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.)

## B. Relevant Legal Authorities

### 1. *Royal Globe*

In *Royal Globe*, the California Supreme Court held that a third party (i.e., an injured individual) may sue an insurer for knowingly committing certain enumerated unfair claims settlement practices "with such frequency as to indicate a general business practice" in violation of Insurance Code section 790.03, subdivision (h)(5), (14),[2] "but that the third party's suit may not be brought until the action between the injured party and the insured is concluded." (*Royal Globe, supra*, 23 Cal.3d at p. 884.)  There, the plaintiff, "filed an action for personal injuries incurred as a result of a fall when she

---

[2]    Insurance Code section 790.03 provides, in relevant part, "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.

   (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

      (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

      (14) Directly advising a claimant not to obtain the services of an attorney." (Ins. Code § 790.03, subd. (h)(4), (14).)

slipped at a food market. She joined as defendants Royal Globe Insurance Company [Royal Globe], which had issued a policy of liability insurance to the market" and an independent insurance adjustment company, asserting a cause of action under Insurance Code section 790.03, subdivision (h)(5) against Royal Globe. (*Royal Globe,* at p. 884.)

The court in *Royal Globe* focused most of its written opinion on its conclusion that Insurance Code section 790.03 permitted a private right of action against an insurer, but also stated, at the end:

> "Finally, we agree with defendant that plaintiff may not sue both the insurer and the insured in the same lawsuit. Section 1155 of the Evidence Code provides that evidence of insurance is inadmissible to prove negligence or wrongdoing. The obvious purpose of the provision is to prevent the prejudicial use of evidence of liability insurance in an action against an insured. [Citations.] A joint trial against the insured for negligence and against the insurer for violating its duties under subdivision (h) would obviously violate both the letter and spirit of the section. [Fn. omitted.]

> "Moreover, unless the trial against the insurer is postponed until the liability of the insured is first determined, the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer. In addition, damages suffered by the injured party as a result of the insurer's violation of subdivisions (h)(5) and (h)(14) may best be determined after the conclusion of the action by the third party claimant against the insured. Thus, plaintiff's claim against defendant was brought prematurely and the trial court should have sustained defendant's demurrer and granted the motion for judgment on the pleadings on that ground." (*Royal Globe, supra*, 23 Cal.3d at pp. 891–892.)

## 2.    *Moradi-Shalal*

About 10 years later, in *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304 (*Moradi-Shalal*), the California

8

Supreme Court reconsidered its prior holding in *Royal Globe* regarding the validity of a private right of action based on Insurance Code section 790.03. The Court explained that Insurance Code section 790.03 was derived from the National Association of Insurance Commissioners' Model Unfair Claims Practices Act, and that many other states with similar statutes had declined to follow the reasoning in *Royal Globe*. (*Moradi-Shalal,* at p. 297.) It also acknowledged several concerns that had arisen since *Royal Globe*, including the potential to increase insurance costs, and the inherent conflict of interest for insurers, "who must not only protect the interests of its insured, but also safeguard its own interest from the adverse claims of the third party claimant." (*Moradi-Shalal,* at p. 302.)

After further discussion, the court reversed its prior holding and concluded that Insurance Code section 790.03 was *not* intended "to create a private civil cause of action against an insurer that commits one of the various acts listed" in subdivision (h). (*Moradi-Shalal, supra*, 46 Cal.3d at p. 304.) However, the court noted that trial courts do "retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as fraud, infliction of emotional distress, and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing." (*Moradi-Shalal,* at pp. 304–305.)

The court went on to clarify that its decision to overrule *Royal Globe* did not impact those cases that were still pending, and, in that context, addressed whether settlement "concluded" an action as required by *Royal Globe*, "[f]or purposes of the present case and other pending *Royal Globe* actions which are not affected by the decision here." (*Moradi-Shalal, supra,* 46 Cal.3d at p. 305.)

9

In doing so, the court reiterated three reasons why it would be improper to join an insurer in a pending action against the insured: 1) It would violate both the letter and spirit of Evidence Code section 1155; 2) "a joint trial would hamper the defense of the insured on the liability question"; and 3) " 'damages suffered by the injured party as a result of the insurer's violation of [Insurance Code section 790.03,] subdivisions (h)(5) and (h)(14) may best be determined after the conclusion of the action by the third party claimant against the insured.' " (*Moradi-Shalal, supra,* 46 Cal.3d at p. 306.)

The court held that, for those cases still pending, "an injured claimant has a right of recovery under *Royal Globe* only upon proof that the insured was actually liable to the third party claimant," and that a claimant who had settled his underlying claim against the insured could not subsequently sue the insurer for damages for statutory bad faith committed in the process of reaching the settlement. (*Moradi-Shalal, supra,* 46 Cal.3d at pp. 308, 311.)

However, in *Moradi-Shalal*, as in *Royal Globe*, the court's statements regarding the potential issues involved in joining an insurer in a pending action against the insured were made specifically in the context of claims brought by the injured party (the plaintiff) asserting the defendant's insurer improperly failed to pay (or settle) a valid insurance claim for the underlying injury. In such cases, the merits of the plaintiff's claims regarding the cause and extent of the injury would necessarily be fundamentally important to both the claims against the insurer and the insured. In other words, if the claim was not valid in the first instance, it would follow that the insurer had a reasonable basis for denying it.

### 3.    *Royal Surplus*

The court addressed a slightly different scenario in *Royal Surplus.* (*Royal Surplus, supra,* 100 Cal.App.4th 193.) There, a group of tenants sued Ocean, the owner of a residential apartment complex, over renovations at the

complex.  (*Id*. at p. 196.)  Ocean tendered its defense to its subcontractors, including Ultimate Construction (Ultimate), and their insurance carriers, including Ranger Insurance Company (Ranger), but they refused.  (*Id*. at p. 197.)  As here, Ranger was the general liability insurer for Ultimate and the contract between Ocean and Ultimate required that Ocean be named as an additional insured on Ultimate's general liability policy.  (*Id*. at p. 196.)  After settling the case, Ocean and Royal (Ocean's insurer) sued its subcontractors and their insurers.  (*Id*. at p. 197.)  In the operative first amended complaint, Ocean and Royal asserted causes of action for breach of contract for failing to defend and indemnify against the subcontractors, and causes of action for equitable subrogation, equitable contribution, and breach of the implied covenant of good faith against the insurers, including Ranger. (*Ibid*.)

The trial court "sustained Ranger's demurrer without leave to amend solely on the ground of misjoinder in that it was improper to name both the insured and insurer in the same action," and the Court of Appeal reversed. (*Royal Surplus, supra,* 100 Cal.App.4th at p. 198.)  Ranger relied on *Royal Globe*, but the court pointed out that *Royal Globe* involved a third-party claim, not a claim by an additional named insured, and Ranger cited no cases in which *Royal Globe'*s holding was applied to an additional named insured. (*Royal Surplus,* at p. 200.)  Because Ocean was an "additional insured," it was a "first party" claimant and was not prohibited from suing both the insurer and its insured in the same suit.  (*Ibid*.)  "The duty of an insurer to provide a defense to an additional insured is broad and applies when there is only a potential for coverage and extends to the entire action."  (*Royal Surplus,* at pp. 203–204; see also 2 Cal. Insurance Law & Practice (2023) ch. 13, § 13.02 [" 'Additional' insureds' . . . may—like named insureds—bring

11

an action for breach of the implied covenant of good faith and fair dealing. Additional . . . insureds may have direct contractual rights under the policy . . . ."].)

Regarding Evidence Code section 1155, the court explained that a breach of contract claim was not a tort claim and that the insurance policy would need to be admitted into the case regardless, to prove whether Ranger met its obligation to procure a policy including Ocean as a named insured. (*Royal Surplus, supra,* 100 Cal.App.4th at pp. 201–202.)  Addressing Ranger's related claim that "its defense of Ultimate could be hampered by discovery propounded on behalf of appellants such that it makes sense for an action against it to be commenced only after the conclusion of Ocean's claims against Ultimate," the court explained that Ranger had not shown that the disclosure of relevant documents in discovery would constitute a violation of any duty owed to its insured.  (*Id.* at p. 201.)  In addition, the court noted that Civil Code section 2860 provides that there is no conflict of interest as to claims or allegations in a litigation for which the insurer denies coverage. (*Royal Surplus,* at p. 201.)  Finally, the court concluded that prejudice may flow in the opposite direction if Ranger did not remain in the action, as the coverage issues between Ultimate and Ranger were "inextricably intertwined."  (*Id.* at p. 203.)

Ultimately, the court found that, despite the discussion in *Royal Globe* and *Morardi-Shalal*, "there is no requirement that an action against the third party tortfeasor be finally determined and liability established for the insured to proceed against her own insurance company for bad faith."  (*Royal Surplus, supra,* 100 Cal.App.4th at p. 204.)  The court concluded by noting: "At the hearing, the court acknowledged appellant could file a separate action against Ranger, and it would probably be declared a related case.  It appears

12

that approach is a distinction without a difference. Accordingly, rather than apply a hypertechnical rule, the possibility of bifurcation should be explored in this case." (*Id.* at pp. 204–205.)

## C.    RLI Was Not Improperly Joined

Here, as in *Royal Surplus,* the City asserts that it entered into a contract with DSI that "required DSI to obtain insurance policies to protect the City against claims arising out of DSI's work, including their negligence." And the City includes an endorsement indicating it is listed as an additional named insured on the policy DSI obtained from RLI. Based on those allegations, the City asserts claims that arise in contract, not tort, against RLI. The City asserts that *Royal Surplus* is therefore controlling in this case.

We are persuaded by the reasoning in *Royal Surplus.* Here, the City, as an additional insured under the RLI policy, is in the same position as the additional insured in *Royal Surplus.* By naming the City as an additional insured, RLI undertook an independent written contractual obligation to the City for certain insurance protections. In other words, the City is a first-party additional insured with privity of contract and standing to sue RLI and, thus, the prohibition against suing an insured and insurer in the same action does not apply. (*Royal Surplus*, *supra*, 100 Cal.App.4th at p. 200; see also *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1986) 184 Cal.App.3d 1428, 1433 (*California State Auto*) [declining to extend *Royal Globe* to a bad faith action by an insured against her own insurance company].)

We acknowledge that there are two minor distinctions between *Royal Surplus* and the present case. First, the underlying claims have not been settled in this case. Whereas the complaint in *Royal Surplus* was a stand-alone complaint following a settlement, here the City has filed a cross-complaint to the Harbs's complaint for wrongful death damages, which has

13

not yet been resolved.  Second, the City has asserted both contract claims and claims for indemnification and apportionment against DSI.  But neither requires a different outcome.

First, there is no significant distinction between a separate complaint and a cross-complaint, which is itself, generally considered to be a separate action from that initiated by the complaint.  (*Westamerica Bank v. MBG Industries, Inc*. (2007) 158 Cal.App.4th 109, 134 ["cross-complaint is generally considered to be a separate action from that initiated by the complaint."]; see also *Glenwood Homeowners Assn., Inc. v. Prosher Development Ltd*. (1980) 111 Cal.App.3d 1002, 1005 [" 'A complaint and a cross-complaint in a single lawsuit are for most purposes treated as independent actions.' "].)  Notably, RLI concedes *Royal Surplus* would be "more on point" if the City had sued DSI and RLI in a separate complaint instead of the Cross-Complaint.

Second, to the extent there is any potential for prejudice (i.e., by alerting the jury to a potential insurance claim), the proper approach would be to sever or bifurcate the actions, as the City suggested in the trial court.  As the Legislative Committee comment to Code of Civil Procedure section 428.10, subdivision (a) explains, "Any undesirable effects that might result from joinder of causes under Section 428.10 may be avoided by severance of causes or issues for trial under Section 1048 of the Code of Civil Procedure." (See also *Royal Surplus*, *supra*, 100 Cal.App.4th at p. 205 ["It is within the discretion of the court to bifurcate issues or order separate trials of actions, such as for breach of contract and bad faith, and to determine the order in which those issues are to be decided."]; *Ahmed v. Peterson* (1986) 186 Cal.App.3d 374, 377 ["But this problem is easily remedied.  The breach of contract cause of action against the Auto Club can be bifurcated from the

14

cause of action against Peterson. '[T]he jury trying the issue of [Peterson's] liability for damages [will be] afforded no knowledge of his insurance coverage.' "].)  "The trial court is empowered to determine the order in which the issues to be determined are tried and may order the . . . complaint tried before the cross-complaint." (*California State Auto, supra,* 184 Cal.App.3d at p. 1433.)

RLI asserts, as Ranger did in *Royal Surplus*, that the Harbs and the City could attempt to seek discovery of materials from RLI's claim file, thereby driving a wedge between RLI and its own insured.  But the analysis in *Royal Surplus* is on point here as well.  The claims against RLI are contract claims and to the extent the City seeks discovery regarding the insurance policy itself, or its interpretation, there is no conflict of interest to address.  Any remaining issues can be handled by the trial court's inherent authority to determine the order of issues at trial.  (See *Royal Surplus, supra,* 100 Cal.App.4th at p. 201; *California State Auto, supra,* 184 Cal.App.3d at p. 1433.)  To the extent RLI asserts the City is not an additional named insured, that matter should be resolved in conjunction with the claims against DSI, who the City alleges had a contractual obligation to ensure the City *was* named as an additional insured, just as it was in *Royal Surplus*. (*Royal Surplus,* at p. 203.)

For these reasons, we conclude that the trial court erred by concluding RLI could not be properly joined in the City's Cross-Complaint, and by sustaining the demurrer on that ground.  Accordingly, we will reverse the trial court's order and the resulting judgment of dismissal.

## D.    The Trial Court Can Address the Remaining Issues on Remand

RLI asserts that we should sustain its demurrer on the alternate grounds presented.  The trial court declined to reach these additional arguments as it concluded they were rendered moot by its granting of the

demurrer without leave to amend on the misjoinder issue. We note that DSI and another named insurer raised at least somewhat similar arguments in their own demurrers, and the trial court sustained those demurrers but granted the City leave to amend. Thus, the City may have already amended, or prepared an amendment to, the Cross-Complaint in ways relevant to the alternate grounds presented by RLI. The parties and the trial court may now be in a better position to amend the pleadings and/or address related arguments regarding the allegations asserted against RLI. For those reasons, while we acknowledge the standard of review permits us to decide the issues as a matter of law, we decline to do so and, instead, remand the matter to the trial court for further consideration of these additional arguments in the first instance.

## III. DISPOSITION

The judgment of dismissal in favor of RLI is reversed and the matter is remanded to the trial court with directions to vacate its order sustaining RLI's demurrer to the City's Cross-Complaint without leave to amend. The trial court shall consider RLI's remaining grounds for demurrer. The City is awarded costs on appeal.

KELETY, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.

16