Filed 5/18/23  McGill v. FPI Management CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LOWRI McGILL,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>FPI MANAGEMENT, INC.,<br><br>   Defendant and Respondent. | H049199<br>(Santa Clara County<br>Super. Ct. No. 18CV338709) |

Appellant Lowri McGill filed a class action complaint for declaratory and injunctive relief against, among others, respondent FPI Management, Inc. (FPI).  In her complaint, McGill alleged that certain provisions of the residential lease agreement she signed are illegal.  FPI, who signed the lease agreement as the property owner's agent, successfully demurred to McGill's complaint on the ground that it was not a proper party to the action.

On appeal, McGill argues the trial court erred in sustaining the demurrer as FPI does owe a duty of care to her and other residential tenants and the trial court should have, at a minimum, given her leave to amend her complaint.  We disagree and will affirm the judgment.[1]

_____

[1] After briefing was complete, McGill requested that we take judicial notice of our July 26, 2022 order denying FPI's motion to strike her opening brief and appendix.  By separate order dated December 8, 2022, we deferred ruling on this request for consideration with the merits of the appeal.  Because the July 26, 2022 order is already part of the record on appeal in this case, judicial notice of it is unnecessary.  The request for judicial notice is denied.

I.    FACTUAL AND PROCEDURAL BACKGROUND

*A*. *The complaint*

On August 14, 2017, McGill signed a residential lease agreement (lease) for an apartment located in Lompoc, California.  FPI signed the lease "on behalf of, and as designated agent for" the owner, Woodstone by Vintage, L.P. (Woodstone).[2]  The lease states that it is an agreement "made and entered into as of August 14, 2017 by and between the [Owner] . . . and the . . . [Residents]."

McGill alleged that certain provisions in the lease appeared to be illegal under Civil Code section 1953, including paragraph 5, entitled "Late Payments and Fees." Paragraph 5 of the lease, which was attached as an exhibit to the complaint, reads in pertinent part:  "Owner and Residents agree that it is and will be impracticable and extremely difficult to fix the actual damages suffered by Owner in the event Residents make a late payment of rent, or when Residents make a payment that is subsequently dishonored by the bank, and that the below charges represent a reasonable approximation of the damages Owner is likely to suffer from a late or dishonored payment. . . . [¶] . . . If Owner has not received the full rent payment within 2 day(s) after it is due to be received under this Agreement, Residents shall pay a sum of $50.00, as a liquidated damage." McGill did not allege, however, that she was ever assessed or paid a late fee under the lease.

McGill alleged that FPI and the other defendants (1) were "managing and otherwise creating and enforcing leases," (2) were advised by McGill of conditions in the unit above hers and "asked to be relieved of the lease and to be paid for relocation to a

---

[2] McGill's complaint alleges the owners of the apartment complex are "Vintage Housing" and "Kennedy Wilson," and names both as defendants, but the lease agreement states that the owner of the complex is "Woodstone by Vintage, L.P."  Facts set forth in exhibits attached to a complaint are given precedence to contrary or inconsistent allegations in the complaint itself.  (*Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1300.)

different complex," and (3) "may be us[ing] uniform[]" lease terms which "may be illegal or ambiguous."

McGill listed a single cause of action for "declaratory judgment and injunctive relief," pursuant to Code of Civil Procedure section 1060.[3]  In that cause of action, McGill alleged that "some or all of [the provisions of the lease identified in the complaint] are illegal . . . ," that "various provisions are ambiguous and are therefore either unenforceable [or must otherwise be interpreted by the Court]," and that "[p]laintiff and the class seek declaratory judgment determining the terms [*sic*] legality or ambiguity or the court's interpretation and injunctive relief [*sic*] . . . ."

### B. *Procedural background*

FPI's demurrer argued that the complaint failed to state a cause of action against it because:  (1) it is not a party to the lease, (2) the complaint was premature given there was no present controversy between the parties, and (3) the identified lease provisions do not violate Civil Code section 1953.

The trial court sustained FPI's demurrer, without leave to amend, finding that because FPI was not a party to the lease, the complaint failed to demonstrate an actual controversy between McGill and FPI and thus did not state facts sufficient to constitute a cause of action against FPI.  After FPI obtained a judgment of dismissal, McGill timely appealed.

## II.    DISCUSSION

### A. *Applicable legal standards including standard of review*

Our standard of review is well established.  "In reviewing a ruling sustaining a demurrer without leave to amend, we assume the truth of the properly pleaded factual allegations and the matters properly subject to judicial notice."  (*Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 393-394

---

[3] Unspecified statutory references are to the Code of Civil Procedure.

(*Committee for Sound Water*).) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v*. *Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

### B. *The trial court did not err in sustaining FPI's demurrer to the complaint*

We first examine whether the trial court erred in sustaining FPI's demurrer to McGill's complaint. Based on the allegations set forth in the pleading, we find no such error since McGill failed to set forth facts sufficient to state a cause of action for declaratory relief against FPI.

"[S]ection 1060 authorizes actions for declaratory relief under a 'written instrument' or 'contract.' Declaratory relief generally operates prospectively to declare future rights, rather than to redress past wrongs. [Citations.] It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs. In short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." (*Jolley v*. *Chase Home Finance*, *LLC* (2013) 213 Cal.App.4th 872, 909.) " 'To qualify for declaratory relief, [a party] would have to demonstrate [that] its action presented two essential elements: "(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [the party's] rights or obligations." ' " (*Ibid*.) "It is elementary that questions relating to the formation of a contract, its validity, its construction and effect, excuses for nonperformance, and termination are proper subjects for declaratory relief." (*Fowler v*. *Ross* (1983) 142 Cal.App.3d 472, 478.)

4

" 'Where the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent.' " (*Filippo Industries*, *Inc*. *v*. *Sun Ins*. *Co*. (1999) 74 Cal.App.4th 1429, 1442.) "[S]ection 1060 . . . does not entitle plaintiff to maintain an action against . . . individual defendants for a declaration of his [or her] rights under a contract to which these defendants are not parties and are alleged to have no legal rights or duties. As between plaintiff and these defendants, no dispute as to their legal rights and duties is shown." (*Oppenheimer v*. *General Cable Corp*. (1956) 143 Cal.App.2d 293, 297 (*Oppenheimer*).)

In this case, McGill's complaint sought a declaratory judgment as to the legality of paragraph 5, among other provisions, of her lease agreement. That agreement is between herself and Woodstone, the owner of the leased property. The lease agreement was signed by FPI, but its signature was expressly "on behalf of, and as designated agent for" Woodstone, not for itself. As it is not a party to the lease, and McGill alleged no facts in her complaint showing that FPI had any contractual relationship with her, she cannot seek declaratory relief against FPI as to the legality of any of the lease provisions. (*Oppenheimer*, *supra*, 143 Cal.App.2d at p. 297.)

In this appeal, McGill now makes a general claim that FPI had a "duty of care" under Civil Code section 1714.[4] She also asserts that she is a third party beneficiary to the contract between FPI and Woodstone and there are viable causes of action against FPI under the unfair competition law. As we explain below, we conclude that McGill's new facts and allegations similarly fail to state a cause of action under any theory she identifies.

---

[4] Civil Code section 1714, subdivision (a) establishes that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person."

*C*. ***The trial court did not err by not giving McGill leave to amend her complaint***

McGill also argues the trial court erred by not permitting her leave to amend her pleading. In her opposition to FPI's demurrer, McGill indicated she could, if given leave to amend, more specifically connect each lease term "to a possible statutory violation" and could allege she paid late fees. On appeal, she contends that, based on the information provided by Woodstone in discovery, she could state causes of action against FPI for: (1) negligence; (2) negligent or intentional misrepresentation; (3) breach of contract as a third-party beneficiary to the contract between FPI and Woodstone; and (4) violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

*1*. ***New facts and allegations presented by McGill***

Before we consider whether McGill has demonstrated that she can amend her pleading to state a cause of action, we first address FPI's objections to the new facts McGill has presented in her appellant's appendix and opening brief, none of which were set forth in her complaint or in her opposition to FPI's demurrer. This information consists of discovery responses McGill received in her continuing litigation against Woodstone, the property owner. Specifically, in a response to one of McGill's special interrogatories, Woodstone stated "[t]he only entity which assisted [it] in setting the late rent fee amount for tenants at [McGill's apartment complex] is Woodstone's property management company [FPI]." In addition to this interrogatory response, McGill submits an excerpt from a spreadsheet, purportedly generated by FPI and entitled "Late Fee Tracker."

The pertinent columns on this document appear to itemize time spent with respect to the various steps taken related to notifying and communicating with tenants regarding late fees, as well as (presumably) financial accounting for those fees.[5]

---

[5] Specifically, the columns reflecting the time spent on each task, calculated in 15 minute increments and denoted in quarters of an hour, are: "Late Fee Notice Prep (continued)

In her brief, McGill argues this information shows that FPI "was responsible for the late fee rate" and that an "actual controversy" exists between FPI and herself because the late fees in question were not "reasonable approximations" or "impracticable to ascertain on a case by case basis."

Documents and facts that were not presented to the trial court generally cannot be considered on appeal. (See *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [documents not presented to trial court generally may not be included in record on appeal].) However, where a party has appealed from a judgment entered after a demurrer was sustained without leave to amend, "a plaintiff may propose new facts or theories to show the complaint can be amended to state a cause of action, thereby showing the trial court 'abused its discretion' (§ 472c, subd. (a)) in not granting leave to amend." (*Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460.) In such a case, it is incumbent on the appellant to " 'show in what manner he [or she] can amend [the] complaint and how that amendment will change the legal effect of [the] pleading.' " (*Ibid.*) Consequently, we will consider the new facts set forth in the appendix in our analysis of whether McGill has met her burden of showing that she can amend her complaint to state one or more causes of action against FPI.

### 2. *McGill's allegations do not state a negligence cause of action against FPI*

With respect to her arguments that FPI owes her a duty of care under Civil Code section 1714, McGill fails to identify any particular tort that FPI may have committed. An "agent may also be held liable on any properly pleaded tort causes of action. . . . The fact that an agent owes a duty to his principal does not preclude him from also owing a duty to third parties foreseeably injured by his conduct." (*Stoiber v. Honeychuck* (1980)

_____

Time . . . 0.75," "Late Fee Notice Service Time . . . 0.5," "Late Fee Notice Communication Time . . . 0.25," and "Late Fee Notice Accounting Time . . . 0.25." According to this document, the "total time" spent is 1.75 hours. Based on a given total hourly wage of $29.89, which we presume is the hourly wage of the employee responsible for completing these tasks, the actual cost of a late fee is $52.30.

101 Cal.App.3d 903, 929-930.) To establish a cause of action for negligence, a plaintiff must allege facts showing a legal duty to use due care, breach of the duty, causation, and damages. (*Colonial Van & Storage, Inc. v. Superior Court* (2022) 76 Cal.App.5th 487, 496, citing *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) There can be no argument that FPI, as property manager, is obligated to exercise due care in managing the apartment complex and any negligence on its part that resulted in injury to a tenant's person or property could conceivably give rise to a tort claim. However, McGill does not allege any injury to her person or property arising out of FPI's management of the apartment complex. Instead, she asserts that FPI's role in calculating the late fee included in her lease agreement gives rise to its liability to her and other similarly situated tenants. As such, her claim against FPI arises out of the contract she signed with Woodstone, not out of FPI's general obligation to act with due care toward the tenants in the property or properties it manages. Accordingly, McGill's allegations do not state a cause of action in negligence against FPI.

In *Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817 (*Goonewardene*), the California Supreme Court found no such duty in an analogous setting, specifically where an employer contracted with a third party to provide payroll services. The plaintiff employee sued the payroll company alleging that it owed employees a duty to ensure that employers did not violate California wage laws. The California Supreme Court held that a third-party payroll services provider has no "tort duty of care to an employee with respect to the obligations imposed by the applicable labor statutes and wage orders." (*Id.* at p. 841.) Specifically, the court decided a duty of care was not warranted because: (1) plaintiff employees already have "a full and complete remedy for any wage loss . . . sustain[ed] as a result of the payroll company's negligent conduct[;]" (*id.* at p. 839) (2) the payroll company's contract with the employer already requires it to act with due care; (3) there is no special relationship between the payroll company and the employees; (4) the possibility of increased tort damages by imposing such a duty "may adversely

8

affect the payroll company's fulfillment of its contractual obligations to the employer[;]" (*id*. at p. 840) and (5) imposing a tort duty owed to employees would impose substantial burdens on the judicial system by making wage and hour litigation "more complicated and more difficult to settle." (*Id*. at p. 841.)

Similarly, like the plaintiff in *Goonewardene*, McGill has not alleged facts showing that FPI owed her, a party "with whom [FPI] had no contractual relationship, a common law duty of care with respect to the loss that plaintiff allegedly sustained as a result of [FPI]'s alleged negligence in the performance of its contractual obligations to [Woodstone]." (*Goonewardene*, *supra*, 6 Cal.5th at p. 838.) The late fees provision about which McGill complains is a term in her contract with Woodstone, and to the extent that term is unlawful, her recourse is against Woodstone, not FPI.[6]

McGill's assertion that a "special relationship" existed between herself, as a tenant, and FPI, as a property manager, also fails to give rise to a duty on FPI's part to McGill with respect to the terms of the lease. "A special relationship between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant," such as the relationship "between parents and children, colleges and students, [or] employers and employees." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 216.) The "special relationship" between McGill and FPI arises from their relationship as tenant and property manager. As discussed above, that relationship imposes a duty on FPI to exercise due care in its management and maintenance of the

---

[6] As noted above, McGill did not allege she paid any late fees in her original complaint. However, in both her opposition to FPI's demurrer and in her briefing on appeal, she asserts she did pay such fees and could amend her complaint to so state. In evaluating whether McGill's proposed new allegations would withstand demurrer, we must assume their truth. (See *Committee for Sound Water*, *supra*, 79 Cal.App.5th at pp. 393-394.)

leased premises, not protect tenants from unlawful contract terms.  (See *Goonewardene*, *supra*, 6 Cal.5th at p. 838.)[7]

### 3. *McGill's allegations do not state a claim for negligent or intentional misrepresentation*

McGill also asserts she can allege a claim for negligent or intentional misrepresentation by FPI due to its involvement in calculating the late fee imposed pursuant to paragraph 5 of the lease agreement.  We disagree.

The elements of a cause of action for intentional misrepresentation are "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage."  (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230-231.)  The elements of a cause of action for negligent misrepresentation are the same, "except that it does not require knowledge of falsity but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true."  (*Id.* at p. 231.)  Causes of action for intentional and negligent misrepresentation sound in fraud and, therefore, each element must be pleaded with specificity.  (*Ibid.*)  "The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made."  (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 793.)

McGill has set forth no specific allegations that FPI intentionally or negligently gave false information to Woodstone in recommending a $50 late fee.  She claims the

---

[7] To the extent it may be construed McGill raises additional claims of error, other than those discussed above, those claims of error are not supported by cogent legal analysis and citation to the record.  (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287.)  On that basis, any arguments McGill may have intended to raise on the issue of negligence that we have not addressed herein are summarily rejected.

10

fact that FPI tracked the costs involved in imposing and collecting a late fee demonstrate: (1) the fee is "outrageous, given the electronic nature of the forms . . . [used to] creat[e] the notices[;]" and (2) it is not "impracticable to determine the actual cost caused by late payment."  These are mere conclusory allegations.  Attorneys and other professionals often bill their time in increments (e.g., 6-minute, 10-minute, 15-minute, etc.), even when the tasks involve "electronic . . . forms."  McGill proffers no specific facts to show that FPI knew or should have known that its calculations are inaccurate or false.  Further, the "actual cost caused by late payment" is unlikely to be a constant, meaning that it is reasonable for FPI to estimate an average cost, and McGill does not allege otherwise.  As a result, we conclude that McGill has failed to show a reasonable possibility she can amend her complaint to state a claim for negligent or intentional misrepresentation against FPI.  (*Blank*, *supra*, 39 Cal.3d at p. 318.)

### *4*. *McGill's allegations do not establish she is a third party beneficiary of the contract between FPI and Woodstone*

McGill next argues that a breach of contract action lies against FPI since she and other class members are third party beneficiaries to the contract between FPI and Woodstone.  She avers that "[p]er its contract with Woodstone, FPI is obligated to provide first class managerial services and its leases are to comply with law."  Again, we disagree.

The third party beneficiary doctrine will be applied when, after "carefully examin[ing] the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to," it can be determined: "(1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.  All three elements must be satisfied to permit the

11

third party action to go forward." (*Goonewardene*, *supra*, 6 Cal.5th at p. 830.)  The court clarified that as to the second element, "the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract."  (*Ibid.*)

In *Goonewardene*, the California Supreme Court found the "motivating purpose" element of the third party beneficiary doctrine could not be met under the facts of that case.  "When an employer hires a payroll company, providing a benefit to employees with regard to the wages they receive is ordinarily not a motivating purpose of the transaction.  Instead, the relevant motivating purpose is to provide a benefit *to the employer*, with regard to the cost and efficiency of the tasks performed and the avoidance of potential penalties.  Although the employer intends that the payroll company will accurately calculate the wages owed . . . under the applicable labor statutes and wage orders, in situations in which it may be unclear or debatable as to how the applicable rules should be interpreted or applied, the employer would reasonably expect the payroll company to proceed with the employer's interest in mind.  In short, the relevant motivating purpose of the contract is simply to assist the employer in the performance of its required tasks, not to provide a benefit to its employees with regard to the amount of wages they receive."  (*Goonewardene*, *supra*, 6 Cal.5th at p. 835.)

The same analysis controls here.  Rental property owners engage property managers with some expectation that a good property manager is a benefit for its tenants, but it cannot be said that such is the "motivating purpose" of that engagement.  The "motivating purpose" of such an agreement is "simply to assist the [owner] in the performance of its required tasks."  (*Goonewardene*, *supra*, 6 Cal.5th at p. 835.)  Accordingly, McGill has not shown a reasonable possibility she can amend her complaint to allege a claim for breach of contract as a third party beneficiary against FPI.  (*Blank*, *supra*, 39 Cal.3d at p. 318.)

12

***D. McGill's allegations do not state a cause of action under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.)***

Finally, McGill contends that she can allege a cause of action against FPI arising under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.). We conclude her allegations fall short as detailed below.

Business and Professions Code section 17200 defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice . . . ." "The purpose of the UCL 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' " (*Solus Industrial Innovations, LLC v. Superior Court* (2018) 4 Cal.5th 316, 340.) To that end, the UCL " 'provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices.' " (*Ibid.*, italics omitted.) "The UCL defines 'unfair competition' as 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.' (Bus. & Prof. Code, § 17200.) By proscribing 'any unlawful' business act or practice (*ibid.*), the UCL ' "borrows" ' rules set out in other laws and makes violations of those rules independently actionable. [Citation.] However, a practice may violate the UCL even if it is not prohibited by another statute. Unfair and fraudulent practices are alternate grounds for relief." (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370; see also *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143 [UCL covers " ' " ' "anything that can properly be called a business practice and that at the same time is forbidden by law" ' " ' "].)

The factual basis of McGill's claim is that FPI, by virtue of its role in calculating and recommending the late fee set forth in paragraph 5 of the lease is directly responsible for this "unfair business practice" or, at a minimum, an aider and abettor of Woodstone's

13

unfair actions. McGill fails to identify a specific statute which is violated by the late fee provision.[8]

In her complaint, McGill relied mostly on Civil Code section 1953, subdivision (a), which states in pertinent part, as follows: "(a) Any provision of a lease or rental agreement of a dwelling by which the lessee agrees to modify or waive any of the following rights shall be void as contrary to public policy: [¶] (1) His[,] [her, or their] rights or remedies under Section 1950.5 or 1954. [¶] (2) His[,] [her, or their] right to assert a cause of action against the lessor which may arise in the future. [¶] (3) His[,] [her, or their] right to a notice or hearing required by law. [¶] (4) His[,] [her, or their] procedural rights in litigation in any action involving his[,] [her, or their] rights and obligations as a tenant. [¶] (5) His[,] [her, or their] right to have the landlord exercise a duty of care to prevent personal injury or personal property damage where that duty is imposed by law."

On its face, Civil Code section 1953 prevents an owner of rental property from using a contract of adhesion to deprive a tenant of specific legal rights. Paragraph 5 of the lease does not require a tenant to agree to "modify or waive" any of the rights listed in Civil Code section 1953 and there is nothing in that statute regarding fees for the late payment of rent.

In any event, although FPI may have, as part of the services it provides to Woodstone, calculated the late fee to be included in the lease, FPI is not a party to that agreement nor is there any allegation that FPI dictated the terms of the lease, as opposed to Woodstone. Accordingly, McGill has failed to show a reasonable possibility she can

---

[8] In her reply, McGill states that the pertinent "constitutional, statutory[,] or regulatory provision" violated by FPI's (or Woodstone's) conduct "could be Civil Code [sections] 1671, 669 (negligence per se), the statutory fraud action, Civil Code [sections] 1572, 1709, 1710, or common law negligent or intentional fraud." However, McGill does not explain how the late fee provision in the lease violates any of the cited statutes so we do not consider them further. We have already described, *ante*, why she has failed to state a negligence or fraud claim against FPI.

14

amend her complaint to state a claim under the UCL against FPI.  (*Blank*, *supra*, 39 Cal.3d at p. 318.)

### III.    DISPOSITION

The judgment is affirmed.  FPI Management, Inc., shall recover its costs on appeal.

_____
                       Wilson, J.


WE CONCUR:


_____
       Bamattre-Manoukian, Acting P.J.


_____
               Danner, J.


<u>McGill v. FPI Management, Inc.</u>
H049199